Tom Phipps v. The State.

*No. 1047. Decided June 17th, 1896.*

1. **Continuance—Admission of Truth of All Facts Stated in Application.**

While it is true that where the State proposes to avoid a continuance by an admission of the facts stated in the application, it must not only admit all the material allegations in said application which the absent witness would swear to, but must also admit the truth of such statements; still, on appeal, where it appears, that an omitted statement has been amply proved, otherwise, was not controverted by the State, and is not of material character, its omission by the State from the admitted statement as to what the witness would swear, would not constitute reversible error.

2. **Murder—Evidence—Causes Inducing a Witness to Run.**

On a trial for murder where the witnesses testified to the acts and conduct of the parties just before the killing, and that upon seeing these hostile demonstrations, they hurriedly and immediately left the store and ran. Held: There was no necessity for the question asked a witness on his cross-examination, "If it was because of the position and threatening attitude of the deceased, and his appearance at the time, that caused him (witness) to think the fight was going to begin, and caused him to leave?" No useful purpose could have been subserved by such testimony under the circumstances of the case, and it was not error to exclude it.

3. **Same—Acts and Declarations of Deceased.**

On a trial for murder, where it appeared that deceased had previously been arrested upon an affidavit made by the father of defendant, and defendant proposed to prove all the particulars of the arrest. Held: That all that was said by deceased about defendant and his father, at the time of the arrest, having been admitted in evidence, it was not error to exclude the further particulars of the arrest.

4. **Same—Impeachment of a Witness.**

On a trial for murder, where a witness has testified to a conversation between deceased and himself on the night of the killing, it is not error to permit another witness to impeach him by testifying, that, said witness had told him, that, two days before the difficulty he had been confined at home in bed.

5. **Same—Evidence—Acts and Conduct of Officer.**

On a trial for murder, where it appeared that deceased had been arrested for abusive language towards defendant's father, and as soon as he was released upon bond he went to the storehouse of defendant and his father, and the sheriff testified that upon discovering where deceased was going he went to said store at once and found deceased there in a "racket" with defendant's father. Held: That it was unnecessary to further ask the witness, why he followed the deceased to the store, and the court did not err in excluding the question and answer.

6. **Reading Authorities to Jury—Practice.**

The reading of authorities before the jury, is a matter within the sound discretion of the trial court, and the action of the court in the matter will not be revised on appeal where no abuse of the discretion is shown.

**7. Terms of Court—Where the Law Fixing is Omitted From Revised Code, and Repealed Law Brought Forward.**

The Act of 1887, fixing the terms of court in the Forty-third Judicial District, composed of the Counties of Jack, Parker and Wise, by some inadvertance or oversight on the part of the codifiers of the Revised Statutes, was brought forward in the new Revised Statute, instead of the Act of 1892, which repealed the Act of 1887, said Act of 1892 having never been repealed. Held: The adoption of the Revised Statutes, did not repeal the said Act, but that Sec. 11, final title of the Rev. Stat. (1895) which provides: "That the laws now in force organizing the several judicial districts, and prescribing the times for holding the District Courts therein, are continued in force," keeps alive the Act of 1892, and that a term of the District Court holden in the county of Jack, in conformity with the provisions of said Act of 1892, was a legal term and the court authorized to try the case against defendant.

APPEAL from the District Court of Jack. Tried below before Hon. J. W. PATTERSON.

This appeal is from a conviction for murder in the second degree, the punishment assessed being five years' imprisonment in the penitentiary. This is the second appeal taken in this case, and the leading features of the case will be found stated in the opinion on the former appeal of Phipps v. State, 34 Tex. Crim. Rep., 560. The facts pertaining to the errors assigned on this appeal are sufficiently stated in the opinion, and a further elaboration is unnecessary.

*Jones & Gilleland, Stark & Stark,* and *W. E. Taylor,* for appellant, filed an able and interesting brief, a good portion of which was devoted to supposed errors in the charge of the court. [It will be seen in the opinion below that the charge is characterized as an "admirable one," and the points made in the brief are not therefore reproduced.—Reporter.]

As to the terms of the courts for Jack County, their propositions were as follows: The verdict, judgment and sentence herein are illegal and void, because the said verdict, judgment and sentence were returned, made and entered at a time when no legal term of the District Court was, or could be held in Jack County.

No legal term of the District Court can be held in any county in Texas, except at such time and place as may be prescribed by law.

The Revised Civil Statutes of the State of Texas, adopted at the regular session of the 24th Legislature, 1895, p. 31, fixes the eighth Monday after the second Monday in May and November of each year, as the date for holding the District Court in Jack County. The term of said court at which appellant was tried and convicted was begun on the 2nd day of March, 1896, and adjourned on the 21st of said month, the said term being begun sixteen weeks after the second Monday in the preceeding November. Rev. Civ. Stat., 1895, p. 31; Con. of Tex., Art. 5, Sec. 7; Doss v. Wagoner, 3 Texas, 515.

*Mann Trice,* Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of murder, and given five years in the penitentiary, and prosecutes this appeal. Appel-

lant made a motion for a continuance, based on the absence of one Ed Garrison, who was alleged to reside in Jack County, and who had been duly subpœnaed on the 9th of March, 1895. This case was tried on the 12th of March, 1896; and the application shows that the witness was present at the intervening terms, and that he only ascertained on Sunday, March 8, 1896, that said witness was at Bowie, Montague County, Texas, and that he immediately procured an attachment to said county for said witness. He further says that since making the affidavit for said attachment to said county, he has learned from the brother of said Ed Garrison that said witness is not now in Bowie, Montague County, and that his present whereabouts are unknown. This is a second application for continuance, and contains the formal averment as such, and also what defendant expected to prove, as follows: ''That defendant expects to prove by said witness that just a few minutes before Mark Luttrell was killed, Mark Luttrell came into the saloon on the south side of the square in Jacksboro, Texas, at which saloon said witness, Ed Garrison was bartender at that time; that said Luttrell came into the saloon with L. L. Cope, constable; that after said L. L. Cope stepped out of the saloon, said Mark Luttrell asked him (said witness) for his pistol; that witness told said Mark Luttrell that he did not have a pistol, whereupon said Luttrell went around the end ·of the counter, and searched for a pistol behind the counter, and when he failed to find a pistol, the deceased (Luttrell) said: 'It is all right, by God; I will get me a bottle of beer, and I will go over and knock old man Phipps in the head with it, and I will beat the s—t out of Tom;' that all the time the deceased (Luttrell) was searching for the pistol, he was cursing and abusing old man Phipps and Tom Phipps, and that he was very angry; that after deceased (Luttrell) quit searching for a pistol, he immediately went behind the screen, which was about the middle of the saloon, and back of the bar; that within a few moments after he went behind the screen the deceased returned to the front of the saloon, and immediately went out of the saloon at the north door, and in a few moments after he left the saloon, said witness heard the first shot fired, which, from the direction, was at or near the Phipps' store; that in said saloon, behind the sceeen, there was a box of beer bottles, and that said box contained both pint and quart bottles, and filled with beer, and the next morning after said killing, the coat of deceased (Luttrell) was on the box containing said beer; that on the night the said deceased was killed, he was drinking, and considerably under the influence of whiskey." In reply to said application, the State filed an admission as to what said witness would testify, admitting the truth of said allegations, as follows: "And now comes the State of Texas, by her County Attorney, and admits that if the witness, Ed Garrison, was present he would testify to, and that the same is true, as follows: 'I saw deceased on the evening of the killing, on the south side of the public square, in the town of Jacksboro, Texas. He was drinking. This was about dusk of said evening. I next saw him when he came into the saloon with L. L. Cope, a short time before

he was killed. Just after Cope left the saloon deceased asked me for a pistol. I told him I had none. Deceased then went behind the counter and looked for one. Deceased stated to me at this time, that he would stamp the shit out of old man Phipps, if he bothered him any more. Deceased then left the saloon, and within a few minutes I heard the shot fired that killed deceased. I was keeping the bar at the Leach saloon at this time. That while deceased was in the said saloon last mentioned, he went to the back part of the saloon, and that there were bottles of beer back there, of different sizes, in a beer case, and deceased's coat was found on said beer case next morning after the killing.' " Appellant claims that this admission omits to state that the deceased, after failing to find the pistol behind the counter of the Garrison saloon, stated: "By God, I will get me a bottle of beer, and I will go over and knock old man Phipps in the head with it, and beat Tom Phipps." And he insists that this omission was a material portion of the absent witness' testimony, and that it was error on this account for the court to overrule his motion.

As to the diligence used, it will be noticed that the appellant does not state when said witness, Garrison, left Jack County. He states that he ascertained that he left on the 8th of March. Now, this witness may have been absent from said county for a considerable length of time, and by the use of diligence the defendant may have ascertained this fact. The application does not show in this regard that the appellant used reasonable diligence to look after his witness, and know that he would be present. Concede, however, that the application is sufficient, still it does not occur to us that the absent testimony is material. The fact that deceased, shortly before he was killed by defendant, stated he was going to get a beer bottle, and was going to beat old man Phipps, or Tom Phipps with it, one or both, was not communicated to defendant; indeed, if this testimony had been communicated to him, it strikes us that it would have put the defendant in a worse attitude than the testimony in the case places him. If defendant had known that he was only going to be attacked with a beer bottle, his right of self-defense may have possibly been much more circumscribed than it was. Besides, several witnesses testify to the same effect, as it is stated the absent witness would have testified upon this point; and, moreover, when deceased was found, after he was killed, he had a beer bottle, either in his pocket or it had fallen under his body. So that the absent testimony upon this point, besides being cumulative, was not a disputed question in the case. There was no controversy on the part of the State as to the fact that deceased made inquiry for a beer bottle on the night before the homicide, and on the night thereof, and that he had a beer bottle at the time he was killed. While it is true that, in order to dispose of a motion for a continuance where diligence has been used to procure the absent testimony, the State must not only admit all of the material allegations alleged in the application that the absent witness would swear to, but must admit the truth of such statements, yet where it appears

that the omitted statement is amply proved otherwise, and is not controverted by the State, and is not of a material character, its omission by the State, from the admitted statement as made, as to what the witness would swear, would not constitute reversible error.   There is nothing in appellant's bill of exceptions as to whether the ball struck the ninth rib and deflected forward and downward, and was not a fact which would tend to solve any particular question in the case.   On the trial of the case the State introduced one Thomas F. Horton as a witness, who testified that he was in the storehouse of the defendant, a few feet from the door, leaning against the counter on the north side of the store, when the deceased came to the door, and was ordered to get out of the door by the defendant, and that deceased stopped at the doorsill or just in the door.   The witness remained in the store long enough to see that the deceased was not going to leave, and that he then walked out of the house, and ran north up the sidewalk.   On cross-examination, counsel for appellant asked said witness, "if it was because of the position and threatening attitude of the deceased, and his appearance at the time, that caused the witness to think that the fight was going to begin, and the witness to leave;" to which question said witness would have answered, "that it was because of the position and attitude of the deceased and his appearance at the time, and from the action and conduct of the defendant; and, further, what I had just heard him say, and my knowledge of the parties, and the feeling and trouble existing between them, that caused witness to think the fight was going to begin, and the witness to leave and run, to escape expected danger to himself."   On objection, this testimony was excluded by the court, and defendant reserved his bill of exceptions.   The conduct of the parties and their attitude when deceased stepped in the door of the defendant's store was detailed by several witnesses.   A number of persons were in the store at the time deceased stepped in the door, and the defendant got down off of the south counter of the store, and told deceased to get out; that they immediately got out of the store hurriedly, and after they got out some ran in one direction and some in another.   All these witnesses were before the jury, and when the jury knew from the witnesses the position and attitude of the defendant, and also knew from the testimony of the witnesses that they immediately left the store and ran, what useful purpose it would serve for the witness or witnesses to tell the jury that they ran because of the position and threatening attitude of the deceased and defendant we fail to see.   As facts, the position and attitude of both of said parties was before the jury.   The exodus of the bystanders was also before them.   There was no necessity for a shorthand rendering of the facts, or for the witnesses to state the impression of danger produced on their minds.   This was already fully manifested by the testimony of the witnesses as to the immediate facts attending the meeting of the parties.

On the trial of the case appellant proved by A. T. Bigham, deputy sheriff of Jack County, that on the morning of the 26th of January,

1895, he arrested deceased on an affidavit made against him by M. V. Phipps on an accusation against defendant for using abusive language to said Phipps on the 25th of January. Defendant also proposed to prove by this witness all of the particulars of said arrest, including all that said deceased said at the time. The court excluded a great portion of this testimony, but in his explanation he shows that all of the testimony relating to the defendant, Tom Phipps, or his father, M. V. Phipps, and what was said by the deceased about them at the time of his arrest, was admitted in evidence. In our opinion, this was all that appellant was entitled to. Nor did the court commit any error in permitting the witness, Stevens, in impeachment of the defendant's witness, Dearmin, who testified as to a conversation between himself and deceased, had on the night of the killing, near Garrison's saloon, to state that said witness, Dearmin, had told him that two days prior to the difficulty he had been confined at home in bed. There is nothing in the contention of the appellant with reference to the remarks of the District Attorney. Appellant showed by the witness, D. F. Carnes, sheriff of Jack County, that deceased had been arrested on Saturday morning before the homicide, and brought to his office, and there gave bond for his appearance to answer an accusation for using abusive language in the presence of M. V. Phipps on the Friday morning before. As soon as deceased gave bond he got on his horse, and went immediately to the storehouse of the defendant and his father, M. V. Phipps; and that the witness, upon discovering where deceased was going, went at once to said store, and found the deceased there in a "racket" with M. V. Phipps. Defendant's counsel then asked witness, Carnes, why he went over to Phipps' store, where deceased had gone; and proposed to prove by him that he anticipated that deceased would raise a difficulty, and went over there to prevent it. This was excluded by the court, and the action of the court is assigned as error. The fact that deceased went over to the store of M. V. Phipps, after his release on bond, was before the jury, and also the fact that the sheriff followed him over there; and, furthermore, it was shown that when the deceased got to the store of M. V. Phipps, he immediately began to curse and abuse him, and was about to make an assault on him, when the sheriff interfered, and took him away. Clearly, the jury could not have misunderstood the reason of the sheriff going over to the store of M. V. Phipps; nor, in the face of the facts transpiring there, could they have desired any further light upon the subject. All of the facts were before the jury, and this was sufficient.

As to the reading of authorities before the jury, or the refusal of the court to permit such reading, this is a matter within the sound discretion of the trial court; and, in the absence of a showing of the abuse of that discretion, it will not be the subject of revision by this court. The salient issues in this case were as to whether the deceased, on the night of the homicide, went to the store of the appellant for the purpose of raising a difficulty with defendant or his father, and at the time he was

shot had done some act or made some demonstation from which it reasonably appeared to the defendant that his life was in danger, or that he was in danger of serious bodily injury; or whether, at the time deceased was shot by the defendant, he had gone to said store, not for the purpose of engaging in a difficulty with the defendant or his father, or, if he had gone for that purpose, at the time he was shot he was not then doing some act or making some demonstration from which it reasonably appeared to defendant that he was in danger of losing his life or of suffering serious bodily injury. These issues were presented to the jury in an admirable charge by the court, which directly applied the law to the facts of the case. The jury could not have misunderstood the charge, nor were the special charges asked by appellant necessary to a clear understanding of the case. The jury evidently believed that the deceased either did not go to the store on that occasion with the purpose of provoking a difficulty with the defendant or his father, or, if he did go there for that purpose, that at the time he was killed he had done no act nor made any demonstration from which it reasonably appeared to the defendant that he was then making or about to make an assault upon him or his father; and that when he fired the shot it was not in his necessary self-defense; and so they convicted him. The facts were all before the jury, and the law applicable and pertinent to the case was given them in the charge of the court. They have returned a verdict of guilty, and we cannot say that the evidence is insufficient to sustain that verdict.

It appears that no action was taken in the court below during the trial of the case with reference to the defendant being tried at a term not authorized by law. The question was first presented in appellant's assignment of errors, which is in the following language: "The verdict, judgment and sentence herein are illegal and void, because the said verdict, judgment and sentence were returned, made, and entered at a time when no legal term of the District Court was or could be held in Jack County." His contention is that the Revised Civil Statutes of the State had gone into effect when this case was tried, and that the Forty-third Judicial District was constituted of the counties of Parker, Wise, and Jack, and that the District Court was authorized to be holden in the County of Jack on the eighth Monday after the second Monday in May and November of each year, and may continue in session four weeks (see Rev. Stat., 1895, p. 31); and that the District Court which tried this case convened on the second Monday in March, 1896, and that the same was not the eighth Monday after the second Monday in May or November. If this was the law regulating the District Court in Jack County when this case was tried, then it is obvious that the contention of the appellant is correct. This involves the question whether or not the law of 1892, which was in force before the adoption of the Revised Code, was abrogated and annulled by the passage of the Revised Civil Code. It will be observed that in the Revised Civil Code the Act of 1887, with regard to the Forty-third Judicial District, and regulating

the time of holding the courts in the counties constituting the same, was brought forward by the codifiers; and the Act of 1892, regulating the time of holding the courts in said Forty-third Judicial District, and which changed the term in Jack County from the eighth Monday after the second Mondays in May and November to the first Mondays in March and September for said county, was not brought forward. See, Laws Called Sess., 22d Leg., p. 59. Evidently the law of 1892, which made this change, escaped the attention of those who revised our Civil Code. The authority for legislating a code is found in Sec. 43, Art. 3, of our State Constitution, which article reads as follows: "The first session of the legislature under this Constitution, shall provide for revising, digesting and publishing the laws, civil and criminal, and a like revision, digesting and publication may be made every ten years thereafter. Provided that in the adoption of and giving effect to any such digest or revision, the legislature shall not be limited by Sections 35 and 36 of this article." It is apprehended that this proviso was to relieve the legislature of following formalities prescribed in Articles 35 and 36, but was not to enlarge their power to present new laws for passage by the legislature; and this seems to have been the idea which prevailed with the legislature in authorizing the revision of our present code. Secs. 2, 3, Chap. 49, p. 53, Acts 22d Leg., are as follows:

"Sec. 2. Said commissioners shall adopt such of the revised statutes civil and criminal, as have not been repealed or amended, together with the present arrangement of titles, chapters, articles, marginal references, and chapter head lines, and shall not change the words or punctuation thereof, except in cases of evident clerical or typographical errors, provided the present numbering of the articles is not required to be preserved.

"Sec. 3. All statutes passed since the adoption of the Revised Statutes, including those passed at the regular special sessions of the Sixteenth Legislature and those that may have been passed at the time said commissioners shall submit their report herein provided for, which statutes by their terms are amendatory of the Revised Statutes or are germane thereto, shall be incorporated in their proper places in such statutes; and all other of said statutes passed as aforesaid, which are general and permanent in their nature shall be collated and arranged into their appropriate titles, chapters and articles, and with marginal references and chapter head lines similar to those used in the present Revised Statutes; provided, that in revising the statutes referred to in this section, said commissioners shall, without making radical changes therein, so revise them as to render them concise, plain and intelligible; provided further that the Civil Statutes, the Penal Code and the Code of Criminal Procedure, shall each be separately indexed and the index placed at the end of each of such subdivisions."

It will be noted that the authority here conferred upon the commissioners was merely to present in a codified form all statutes contained in the former Revised Statutes and those passed since the adoption of said

statutes. In 1895, when the commissioners had finished their work, and the legislature passed the act which adopted the Revised Civil Statutes, the Penal Code, and the Code of Criminal Procedure, said legislature provided as follows:

"Sec. 3. Where any article in said Revised Statutes or Codes has been expressly repealed by the Twenty-third and Twenty-fourth Legislatures said articles shall be omitted in said volume, and in lieu thereof there shall be inserted a statement to the effect that said article has been repealed, also the date of the act by which the same was repealed, and the page of the Session Acts containing said repealing statute.

"Sec. 4. Where any article in said Revised Statutes or Codes shall have been amended and re-enacted by either of said legislatures, said article shall be omitted, and the article as amended and re-enacted, shall be inserted in lieu thereof, with marginal notes or references showing the date of the statute by which said article was amended, and the page of the Session Acts in which said statute appears.

"Sec. 5. When any article, chapter or title of said Revised Statutes or Codes has been modified by an act of either of said legislatures, but the same is not amended and re-enacted, then said article, chapter or title shall be retained in said volume, and the act modifying the same shall be inserted immediately after such article, chapter or title, together with like marginal notes or references, as hereinbefore provided.

"Sec. 6. General acts of said legislatures on the same subject with any of the articles, chapters, or titles of said Revised Statutes and Codes shall be inserted immediately after such articles, chapters, or titles, with marginal notes or references as provided above, and general laws of said legislatures not on the same subject with any of said articles shall be inserted with reference to said articles, chapters, and titles thereof as may be deemed most appropriate by the codifier to be appointed as hereinafter provided; but in no event shall the number of any article, chapter, or title, be changed by said codifier, but said number shall remain as in the act by which said statutes and codes were adopted and established." See, Acts 24th Leg., p. 110, §§ 3–6.

From the latter act it will be seen that, if any provision of the Revised Statutes or Codes had been expressly repealed by the Twenty-third and Twenty-fourth Legislatures, the commissioners and legislature were authorized to omit the same from the Code, and the omissions, it appears, are confined to the acts of the Twenty-third and Twenty-fourth Legislatures, so that they were not authorized to omit any act of any preceding legislature enacted since the last code had gone into effect. As to all other laws, and even as to unrepealed acts of the Twenty-third and Twenty-fourth Legislatures, they were simply authorized to bring them forward, and arrange them in their proper places. As to the acts of the Twenty-second Legislature, the duty of the commissioners was clearly to bring forward in the new code all of said acts. The Act of 1892, with reference to the terms of court in the Forty-third Judicial District, effectually repealed the Act of 1887, and if this had been brought forward

in its proper place, following the Act of 1887, no question would arise. The commissioners or the legislature seem to have perceived the difficulty attending the revision and codification of our laws, and apprehended, especially with reference to the judicial districts, the terms of which are being continually changed by laws, that some of the laws regulating the holding of courts in certain judicial districts might not be brought forward, and so, as a general saving clause, among the general provisions, we find, in the final title of the Revised Statutes of 1895 (Section 11), as follows: "That the laws now in force organizing the several judicial districts and prescribing the times for holding the District Courts therein, are continued in force." This evidently was intended to apply to just such errors and omissions as the present one, and, in the view we take of this question, it is not necessary for us to decide what the effect would have been—the law of 1892 not having been brought forward in the Revised Civil Statutes—if this saving statute had been omitted. We think that is controlling, and refers to and keeps alive the Act of 1892, which repealed the Act of 1887. The Act of 1887 did not have the effect, under section 11, of said final title, to repeal and annul the law of 1892. Accordingly we hold that the District Court of Jack County was legally convened on the first Monday in March, 1896, and that it was authorized to try the case against the defendant. The judgment and sentence of the lower court is affirmed.

HURT, Presiding Judge, absent.                    *Affirmed.*