**HOUSTON INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 11137.**

Court of Civil Appeals of Texas.

Austin.

Feb. 12, 1964.

Rehearing Denied March 11, 1964.

Bracewell, Reynolds & Patterson, William Key Wilde, Houston, for appellant.

Ford W. Hall, Sears & Burns, Houston, for appellee.

HUGHES, Justice.

This suit is on a sworn account brought by Southwestern Bell Telephone Company against the Houston Independent School District to recover the sum of $82,899.67 allegedly due for local exchange telephone service furnished schools of the District within the corporate limits of Houston by the Company from September 1, 1959, to March 1, 1961.

The Company alleged in its petition:

"Local exchange telephone service furnished by Plaintiff to Defendant during the time and at the locations specified hereinabove, was reasonably worth the sum of $136,125.68, the same being in accordance with the one-party business flat rate charged generally during such time in said Houston District Exchange. The one-party business flat rate is the general classification of local exchange service set out in Plaintiff's published tariffs applicable to all telephones installed by Plaintiff in all public schools within the State of Texas. * * *

"Defendant has paid Plaintiff the sum of $53,226.01 as a payment on said account but has failed and refused to pay the Plaintiff the balance of $82,-899.67 though often requested, to Plaintiff's damage in said last named amount."

The District defended by specially pleading as follows:

"The Defendant, Houston Independent School District, further specially pleads that Plaintiff operates its telephone system in and around the City of Houston, Texas, pursuant to a franchise heretofore granted to the Plain-

tiff by the City of Houston, acting by and through its duly elected Mayor and Council. That the said City of Houston, under the Constitution and statutes of the State of Texas, and under the charter of the City of Houston, is vested with authority to regulate the rates and the services of the Plaintiff. Pursuant thereto the said City of Houston has, by ordinance, established rates to be charged by Plaintiff for telephone service. The said City of Houston has classified subscribers as 'business' subscribers or 'residence' subscribers and has provided, by ordinance, a rate schedule for business subscribers and residence subscribers and the said City of Houston, by ordinance, has directed that all telephone service furnished to public school buildings shall be at the rates provided for residence telephones."

The parties tried this case before the Court, without a jury, upon stipulated facts, it being provided in the stipulation, however, that either party could offer evidence of additional facts if desired. No such additional evidence was offered.

The Trial Court rendered judgment for the Company for the amount in suit. At the request of the District the Trial Court filed conclusions of law which follow:

"It is stipulated by the parties that the $82,899.67 for which Plaintiff sues in its Original Petition correctly represents the difference between Defendant's account with Plaintiff for exchange telephone service calculated at the business rate and the same account calculated at the residence rate. (Stipulation of Fact No. 20). I conclude that Plaintiff is entitled in law to maintain this action against Defendant upon such Defendant's account with Plaintiff and recover such amount of $82,899.67.

"2.

"I conclude that, prior to September 1, 1959 (the beginning of the period

covered by Plaintiff's suit, Stipulations of Fact Nos. 19 and 20), the City Council of the City of Houston repealed the ordinance known as Section 346 of the Revised Code of Ordinances of the City of Houston of 1922, (Stipulation of Fact No. 11), originally enacted on January 3, 1911 (Stipulation of Fact No. 8).

"3.

"Independent of the conclusion that the ordinance of 1911 was repealed, I conclude that such ordinance of 1911 was rendered void and invalid by the final judgment in Cause No. 426,913 in the District Court of Harris County, Texas for the 133rd Judicial District of Texas styled 'Southwestern Bell Telephone Company, Plaintiff vs. City of Houston, et al, Defendants', which judgment enjoined the City of Houston from enforcing or attempting to enforce by suit or otherwise the charging, collecting or observance by Plaintiff of the rates and charges for telephone service in any ordinance enacted prior to April 26, 1955 effective in the City of Houston (Stipulation of Fact No. 15a).

"4.

"Independent of the conclusions that the ordinance of 1911 was repealed and was invalidated by permanent injunction, I conclude that the ordinance of 1911 unlawfully commanded Plaintiff to discriminate and charge the Houston public schools a lesser rate than the rates charged other schools for similar service, and unlawfully commanded Plaintiff to receive by special rate, a lesser compensation for its service than it received from other corporations, persons, firms or association of persons for a like service under substantially similar circumstances and conditions, all in violation of Article 4005 and Article 4013 of the Revised Civil Statutes of 1925 and, therefore, such ordinance was and is wholly void and invalid."

We are of the opinion that the Court erred in concluding that the ordinance relied upon by the District has been repealed or that its enforcement has been enjoined or that any discrimination exists of which the Company can complain. It follows that the District, not the Company, was entitled to judgment.

We will set out the full history and pertinent content of the ordinance upon which the District relies as well as the ordinances and statutes upon which the Company relies to show its repeal.

On January 3, 1911, the City Council of the City of Houston adopted an ordinance which, except for the emergency clause, reads:

"AN ORDINANCE FIXING THE RATES TO BE CHARGED BY ANY PERSON, FIRM, CORPORATION, OR RECEIVER, OPERATING OR OWNING TELEPHONE LINES IN THE CITY OF HOUSTON FOR FURNISHING TELEPHONE SERVICE TO FIRE STATIONS AND TO THE PUBLIC SCHOOLS OF THE CITY OF HOUSTON.

\*   \*   \*   \*   \*   \*

"BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF HOUSTON:

"Section I. That from and after the passage of this ordinance any person, firm, corporation or receiver, operating or owning telephone lines within the City of Houston shall furnish telephone service to fire stations and to *public schools* at the following rate, viz: Telephone service shall be furnished to fire stations at the rates provided for business or office phones. *And telephone service shall be furnished to public school buildings at the rates provided for residence phones."* Italics ours.

On May 6, 1914, the City of Houston adopted a Code of Ordinances which car-

ried forward and included Section I of the 1911 ordinance copied above. The same is true of the 1922 Revised Code of Ordinances of the City of Houston.

On June 5, 1941, the City of Houston adopted an ordinance "Regulating the Rates of the Southwestern Bell Telephone Company." This ordinance called for and fixed a reduction of rates to be charged for business and residence service. It did not mention rate classification of *public schools* within the City of Houston.

On December 31, 1942, the City of Houston adopted a Code of Ordinances called, "The Revised Code of Civil and Criminal Ordinances of the City of Houston, 1942." This codification contained the following provisions:

"Section 4. (a) All civil ordinances of a general and permanent nature and all criminal ordinances in force when this revised code takes effect which are inconsistent herewith or in conflict with this code are hereby repealed except as herein provided.

"(b) That all ordinances in effect upon the effective date of this code not inconsistent with any of the provisions of this revised code which are omitted from such revision or codification shall not be deemed to have been repealed, but shall be continued in full force and effect unimpaired by this revised code. \*  \*  \*

"(f) That no ordinance relating to a contract to which the city is a party or any contract made for its benefit shall be affected by the repealing clause of this ordinance. \*  \*  \*

"(j) That nothing herein shall be construed as a repeal of any franchise, license or right granted by the City of Houston to any person, firm or corporation which license, grant, power or franchise was legally in force and effect at the date of the effective date of this revised code. Every such license,

grant, power or franchise shall expire as originally provided by ordinance."

This codification (1942) omitted and made no reference to Section I of the 1911 Ordinance, copies above, or its counterpart in the 1914 and 1922 Codes or to their subject matter. Such codification did re-enact the rate provisions of the June 5, 1941, ordinance.

On December 1, 1949, the City Council of the City of Houston passed a telephone rate ordinance the caption of which reads:

"AN ORDINANCE MAKING FINDINGS OF FACT WITH RESPECT TO THE PETITION OF THE SOUTHWESTERN BELL TELEPHONE COMPANY FOR AN INCREASE IN ITS RATES FOR EXCHANGE SERVICE IN THE CITY OF HOUSTON; GRANTING THE PETITION OF SAID COMPANY; DETERMINING AND FIXING THE SCHEDULE OF RATES TO BE CHARGED BY SAID COMPANY FOR EXCHANGE TELEPHONE SERVICE IN THE CITY OF HOUSTON; AND DECLARING AN EMERGENCY."

This ordinance made findings upon which a fair return on the business of appellee was calculated and it established a schedule of rates designed to bring about this result. This ordinance did not refer to the classification ordinances of 1911, 1914 and 1922, and contains no mention of rate classification for public schools.

On March 12, 1958, the City Council of the City of Houston adopted a Code of Ordinances styled "Code of Ordinances, City of Houston, 1958." This Code of Ordinances contained the identical provisions contained in the 1942 Code of Civil and Criminal Ordinances of the City of Houston which we have copied above.

The rate classification made by the 1911, 1914 and 1922 Ordinances is not included in this 1958 Code revision, nor is such classification in any manner referred to or mentioned.

There is no article, chapter, section or provision in the 1958 Code of Ordinances for the City of Houston fixing and determining telephone rates in the City of Houston.

It is apparent that if the 1911, 1914 and 1922 rate classification ordinances have been repealed that such repeal has been effected through the doctrine of implied repeal since there has been no express repeal of such ordinances. The rules to be applied in determining this question have been often stated. We will quote from some of the authorities in this respect.

In Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197, 157 S.W. 937, Chief Justice Brown, writing for the Court, stated:

"There is no express repeal of the former law; hence, if repealed, it must be by implication, which is not favored. The two laws relate to the same subject, and should be considered as if incorporated into one act. It being so considered the two can be harmonized and effect given to each, there can be no repeal. Neill v. Keese, 5 Tex. 23. 'There statutes, being in pari materia, and relating to the same subject, are to be taken together and so construed, in reference to each other, as that if practicable, effect may be given to the entire provisions of each. * * * Thus considered, there is no repugnancy between the provisions of these statutes. They may stand together, and effect may be given to the entire provisions of each. And thus to construe and give effect to them, is in accordance with the established rule of construction.' Brown v. Chancellor, 61 Tex. [437] 438."

In Gordon v. Lake, 163 Tex. 392, 356 S.W.2d 138, the Court, Associate Justice Walker writing, stated the rule in these words:

"A statute may be repealed expressly or by implication. Where a later enactment is intended to embrace all

the law upon the subject with which it deals, it repeals all former laws relating to the same subject. See Motor Inv. Co. v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278. Repeals by implication are not favored, however, and laws relating to the same subject should be considered as though incorporated in the same act. If they can be harmonized and effect given to each when so considered, there is no repeal by implication."

In 50 Am.Jur., p. 546, Statutes Sec. 539, the rule against presuming a repeal by implication is stated in this language:

"Presumptions Applicable. — The courts will not presume that the legislature intended a repeal by implication. Indeed, the presumption is always against the intention to repeal where express terms are not used, and where effect can reasonably be given to both statutes. The presumption rests on the improbability of a change of intention, or, if such change occurred, on the probability that the legislature would have expressed it with an express repeal of the first. In this connection, it may be presumed that laws are passed with deliberation, and with full knowledge of existing ones on the subject."

See 62 C.J.S. Municipal Corporations § 437, p. 836.

■■■ Applying these rules here and indulging the presumption against repeal by implication we do not find the requisites of repeal by implication present in the history and wording of these ordinances. Specifically, we do not find any irreconcilable conflict between ordinances establishing telephone rates and ordinances classifying users subject to such rates, nor do we find the Codes of Ordinances to be complete within themselves as embodying all of the Civil and Criminal laws of the City of Houston. Neither can we conclude that the purely rate ordinances were intended to embrace all the law on the subject of charges for telephone service in the City of Houston.

The 1911, 1914 and 1922 ordinances were not, standing alone, rate ordinances at all. They contained no rates. They established no rates. They provided, in effect, as to public schools, that the rates to be charged should be the same as those charged for telephone service to residences, whatever such rates might be. There was no repugnancy between these ordinances and rate schedules for telephone service furnished to business and residences then in effect in the City of Houston. If there was no repugnancy then, there is none now because nothing has transpired since to create a repugnancy. For forty-eight (48) years the Company, appellee, saw no repugnancy. We do not believe they slept on their rights. Such classification ordinances merely complement and are auxiliary to the ordinances prescribing rates for telephone service.

Neither the 1942 nor 1958 Code of Ordinances for the City of Houston purported to exclusively contain all the ordinances of that City. They purport just the contrary because they both contain provisions carrying forward omitted ordinances not in conflict with the Codes.

The 1942 recodification of City of Houston Ordinances contained the June 5, 1941, schedule of telephone rates. This ordinance, for the reasons stated, is not in conflict with the rate classification ordinances of 1911, 1914 and 1922.

The 1958 recodification of the ordinances of the City of Houston contained no schedule of telephone rates and the question of conflict of such Code with the 1911, 1914 and 1922 rate classification ordinances is absent.

The Company contends, however, that the provisions of the 1942 and 1958 Codes of the City of Houston wherein ordinances

not in conflict therewith are carried forward and not repealed by omission are in conflict with Art. 1176a, Vernon's Ann.Civ. St., and therefore unconstitutional. This statute provides, in part:

"Section 1. Any city of this State having a population of more than five thousand (5,000) according to the last preceding Federal Census, whether incorporated under General or Special Law, shall have the power to codify its civil and criminal ordinances and adopt a civil and criminal code of ordinances, together with appropriate penalties for the violation thereof, which said code when adopted shall have the force and effect of an ordinance regularly enacted with the usual prerequisite of law.

"Ordinances changed without separate amendment or repeal

"Sec. 2. That should it become necessary in the codification of such ordinances, both civil and criminal, to change, alter or repeal any portion thereof or to change the terminology of any ordinances heretofore adopted, such change being occasioned by a change in the form of government and the redesignation of offices and officers, then such city is hereby expressly authorized to amend, omit or repeal the same and to change the terminology to conform to its present form of government without the necessity of re-enacting, repealing or amending any such ordinance separately incorporated in said code.

1. Section 2 is obviously inapplicable here because it is limited to changes in ordinances brought about by a change in the form of government. No such changes, so occasioned, have been called to our attention. This section by authorizing repeal by omission of certain matters would, by implication, deny repeal of other matters by mere omission.

2. See 39 Tex.Jur.2d, Municipal Corporations, Sec. 255, p. 583.

"Adoption of code

"Sec. 3. That upon the codification of said code of civil and criminal ordinances, such city is authorized to adopt such code by the enactment of an ordinance and upon the adoption thereof, the City Secretary shall record said code as adopted in the ordinance records of such city, and thereafter such record shall serve as a record of the ordinances so codified and it shall not be necessary in establishing the content of any particular ordinance so codified to go beyond said record."

We find no language in this statute [1] which prohibits a City from codifying some of its ordinances and providing, as did the City of Houston, that other ordinances not so codified and not inconsistent with the codification should remain in effect. Cities are required to act by ordinance in many and varied ways, some of a general nature, others specific and limited to single transactions. For example: Cities must act by ordinance in levying taxes, calling bond elections, closing streets and in ordering street improvements and assessments relating to them.[2] If the Company is correct, then all of such ordinances must be included in a recodification of ordinances or they would be repealed. Inclusion of ordinances of this type in a recodification would be an imposition upon cities and would cast a burden upon them which would greatly reduce the value of the authority to recodify. This result should only be thrust upon cities by plain and specific language not found in this statute.[3]

3. See American Indemnity Co. v. City of Austin, 112 Tex. 239, 246 S.W. 1019, where the Court in discussing the effect of recodification of State laws under Art. 3, Sec. 43, Texas Constitution, said:
"Section 4 of the final title to the Civil Code of 1879 and a similar provision in the revisions of 1895 and 1911 declared that all civil statutes of a general nature in force when the Revised Statutes should take effect, and which were not included there-

The 1911 and 1914 ordinance relating to rate classification of telephone users is of a special type of ordinance. It is not of interest to the public generally. It is only of interest to a small group of users—fire stations and public schools.

We hold that the City of Houston had the authority, and that it properly exercised such authority, to recodify such of its ordinances as it deemed appropriate and to continue in effect without recodification, the 1911 and 1914 rate classification ordinances.

On April 26, 1955, in the District Court of Harris County, 133rd Judicial District, a final judgment was entered in Cause No. 426,913, styled Southwestern Bell Telephone Company, Plaintiff v. City of Houston, et al, Defendants, from which we quote:

"It is, therefore, ORDERED, ADJUDGED AND DECREED that the temporary injunction heretofore issued herein be and the same is hereby made permanent and that the Clerk of this Court forthwith issue a permanent injunction restraining and enjoining the defendants, the City of Houston, Texas, Roy Hofheinz, as Mayor, George Kesseler, Joe G. Resweber, Matt Wilson, Clyde J. Fitzgerald, J. M. Heflin, Ira Kohler, Harry Holmes, Jr., and George G. Marquette, Jr., as Members of the City Council of the City of Houston, Texas, their agents, servants, employees, representatives and successors in office:

"(a) From enforcing or attempting to enforce by suit or otherwise the charging, collecting, or observ-

ance by this plaintiff of the rates and charges for telephone service prescribed and set forth in Ordinance 4508 enacted by the City Council of the City of Houston on the 1st day of December, 1949, or in any other ordinance heretofore enacted and effective in the City of Houston;

"(b) From assessing or seeking to enforce against the plaintiff, its officers, agents or employees, any fine or penalty or criminal charges on account of the failure of the plaintiff to charge and collect only the rates and charges for telephone service prescribed by Ordinance 4508."

The Company takes the position that the effect of this injunction is to enjoin enforcement of the 1911, 1914 and 1922 classification ordinances.

It was stipulated that: "From the date of the enactment of the ordinance of 1911 until the public schools were taken over by Defendant in 1923, all public schools within the City of Houston were charged the residence rate by Plaintiff. After such schools were taken over, all public schools of the Houston Independent School District located within the corporate limits of the City of Houston were charged the residence rate by Plaintiff until the first day of September, 1959. Beginning on the 1st day of September, 1959, Plaintiff has billed and is still billing Defendant the business rate for all public schools located within the corporate limits of the City of Houston." "All telephone service to the Houston Independent School District billed through the main switchboard of the administrative or business offices (CA 4–9871) has been billed

in, or which were not expressly continued in force, were thereby repealed. Provisions of this character are always given effect in revised codes, * * *.

"The Revised Statutes of this state, when once adopted, become the entire law on the subjects they purport to cover, unless specially excepted, * * *."

See also Phipps v. State, 36 Tex.Cr.R. 216, 36 S.W. 753, holding that the final title in the Revised Statutes of 1895, providing that laws in force organizing judicial districts and prescribing their terms should continue in force carried forward the specific legislative acts pertaining thereto.

and paid at the business rate at all times material to this suit."

■ This judgment clearly has reference only to the rates charged the various classifications of users. It does not enjoin classifications per se. An appeal from an interlocutory injunction in this case is reported in 263 S.W.2d 169, Galv.Civ.App., writ ref., where the Court stated:

"Solely involved is the question of whether the ordinance of the City of Houston, dated December 1, 1949, provides a schedule of rates which deprives appellee of a fair or reasonable return on the fair value of its property being used to render public service and is thus violative of the United States Constitution as interpreted by the Supreme Court of the United States and of this State."

The most that can be said about this judgment in behalf of appellee is that it is ambiguous. If there is ambiguity in the 1955 judgment, then the parties' construction of it is, when likened to the construction of ambiguous contracts,[4] binding upon the parties and upon the Courts. 13 Tex. Jur.2d, Contracts Sec. 128, p. 300. For more than four years the Company practically construed such judgment as *not* enjoining enforcement of the 1911, 1914 and 1922 ordinances. This, in our opinion, is

conclusive against its present contention to the contrary.

■ The last reason assigned by the Trial Court to sustain its judgment for the Company is that to uphold the 1911, 1914 and 1922 rate classification ordinances would be to authorize the Company to discriminate in its charges for telephone service in violation of Arts. 4005 and 4013, V.A. C.S.,[5] the record disclosing that the Company charges other schools in the same exchange area at business rates. The Company is in no position to complain of discrimination. Only the victim has this privilege. In Oil Well Drilling v. Associated Indemnity Corporation, 153 Tex. 153, 264 S.W.2d 697, opinion by Mr. Justice Griffin, it is stated: "The law is well established that only those against whom a discrimination is made by statute can invoke the benefit of the Constitution and laws preventing such discrimination."

Moreover, it has been held that it is not unlawful to discriminate in favor of the public. New York Telephone Co. v. Siegel-Cooper Co., 202 N.Y. 502, 96 N.E. 109, 36 L.R.A.,N.S., 560. See Railroad Commission of Texas v. United States, 290 S.W.2d 699, Austin Civ.App., affirmed 159 Tex. 197, 317 S.W.2d 927, State of Florida v. Peninsula Telephone Company, 73 Fla. 913, 75 S.W. 201, 10 A.L.R. 501, holding statutes

---

4. "Judgments are construed like other written instruments." Permian Oil Co. v. Smith, 129 Tex. 413, loc. cit. 449, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152.

5. These statutes provide, in part:
"Article 4005.
"No * * * telephone company * * * shall knowingly * * * give or grant to any person, firm or associations of persons a * * * privilege * * * which is used or which is given to be used instead of the regular * * * rate * * * or shall give any * * * right or privilege to transmit any message * * * in this State * * * for greater or less * * * rate than is charged other persons in this State for similar serv-

ice, except as hereinafter provided in this title.
"Article 4013.
"No corporation, company or person mentioned in the first article of this title shall directly or indirectly, by any special rate, * * * or other device, demand, exchange, collect or receive from any person, firm, association or corporation a greater or less or different compensation for any service rendered or to be rendered, in the transportation of * * * messages, than it or he charges, demands, collects or receives from any other corporation, person, firm or association of persons doing business in this State for a like service under substantially similar circumstances and conditions, except as is provided in this title * * *."

similar to Arts. 4005 and 4013, supra, are not applicable to and do not include cities and counties. See Pond, Public Utilities, Sec. 289, 4th ed.

Being unable to sustain any ground upon which the Trial Court predicated its judgment and no additional grounds being assigned by the Company, we reverse the judgment of the Trial Court and render judgment that the Company, appellee, take nothing by its suit.

Reversed and rendered.