THE STATE OF FLORIDA, *Appellant*, v. PENINSULAR TELEPHONE COMPANY, *et al., Appellees.*

Opinion Filed April 19, 1917.

1. A city or a county being a governmental as well as a corporate entity, is in its governmental capacity, not a "person or corporation" within the province of Chapter 6525, Acts of 1913.

2. Chapter 6525, Acts of 1913, does not expressly or by fair implication require compensation for telephone service to be only in cash payments as the service is rendered.

Appeal from Circuit Court for Hillsborough County; F. M. Robles, Judge.

Decree affirmed.

*D. C. McMullen,* for Appellant;

*Lunsford & DeVane* and *John P. Wall,* for Appellees.

WHITFIELD, J.—As authorized by statute the Railroad Commissioners brought suit in the name of the State praying for a decree "enjoying and restraining the defendant telephone company from giving directly or indirectly any free or reduced service or any free pass or frank for the transmission of messages by telephone be-

tween points in the State of Florida except as provided
for in Section 8 of Chapter 6525 of the Laws of Florida."
It is alleged that the defendant company furnishes twenty
(20) free phones to the City of Tampa; one free phone to
the County Court house; one free phone to the "Woman's
Club;" and thirteen phones to city officers or employees at
a similar rate and charge as for residence telephones. By
amendment the City of Tampa was made a party defend-
ant. Demurrers to the bill of complaint were sustained.
The complainant not desiring to further amend, the bill
was dismissed and the complainant appeals.

The question argued is whether under the statute a
telephone company may furnish phones to a municipality
for the use of its officers, free or at a less rate than is
charged the general public. Primarily, however, it should
be determined whether the pleadings show that free or re-
duced rates are in fact accorded to the municipality.

Chapter 6525 Acts of 1913 contains the folowing pro-
visions:

"Sec.  1.   The Railroad Commissioners of this State
shall exercise over and in relation to telegraph companies
and telephone companies the powers by this Act con-
ferred.

"Sec. 2.   All rates, tolls, contracts and charges, rules
and regulations of telephone companies and telegraph
companies, for messages, conversations, services rendered
and equipment and facilities supplied whether such mes-
sage, conversation or service to be performed be over one
company or line or over or by two or more companies or
lines, shall be fair, just, reasonable and sufficient.

"Sec. 4.   Upon order of the Commissioners, every
telephone company and every telegraph company shall file
with the Commissioners and shall print and keep open to
public inspection at such points as the Commissioners may

designate, schedules showing the rates, tolls, rentals, contracts and charges of such companies for messages, conversations and services rendered and equipment and facilities supplied for messages and service to be performed within the State between each point upon its line and all other points thereon.

"Sec. 8.   No telephone or telegraph company shall charge, demand, collect or receive for any service rendered or to be rendered any compensation other than the charge applicable to such service as specified in its schedule on file and in effect at that time, nor shall any telephone company or telegraph company refund or remit, directly or indirectly, any portion of the rate or charge so specified, nor extend to any person or corporation any advantage of contract or agreement or the benefit of any rule or regulation or any privilege or facility not regularly and uniformly extended to all persons and corporations under like circumstances for like or substantially similar service.

"No telephone company or telegraph company subject to the provisions of this Act shall, directly or indirectly, give any free or reduced service or any free pass or frank for the transmission of messages by either telephone or telegraph between points within this State, Provided, That it shall be lawful in this State to issue, exchange passes and franks, and grant free and reduced service, and. contract for exchange of services by and between common carriers, as defined by and provided for in the Act of Congress entitled 'An Act to regulate commerce' and Acts amendatory thereof and supplemental thereto.

"Sec. 9.   No telegraph or telephone company, shall directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any person or corporation a greater or less

compensation for any service rendered or to be rendered with respect to communication by telegraph or telephone or in connection therewith, except as authorized in this Act, than the charges, demands, collects or receives from any other person or corporation for doing a like and contemporaneous service with respect to communication by telegraph or telephone under the same or substantially the same circumstances and conditions.

"Sec. 10.    No telegraph company or telephone company shall make or give any undue or unreasonable preference or advance to any person, corporation or locality, or subject any particular person, corporation or locality to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

"Sec.    19.    The Commissioners shall have power to regulate by reasonable rules the terms of telephone service contracts between telephone companies and their patrons.

"Sec.    28.    That as the policy of this State is hereby declared to be that all persons, firms or corporations engaged in or carrying on a telephone business or telegraph business within this State should be and shall be under the exclusive jurisdiction of the Railroad Commission of this State, and not under the jurisdiction of any municipal body, so far as relates to the rates or charges or service and facilities of such persons, firms or corporations, and the matters and things herein mentioned, all local or special laws or any other laws or parts of laws in conflict with the provisions of this Act are hereby repealed."

It does not appear that the Railroad Commissioners have exercised their "power to regulate by reasonable rules the terms of telephone service contracts between telephone companies and their patrons." Nor does it appear that the defendant telephone company has filed with the commission schedules showing its rates for telephone

service. It does appear that the defendant telephone company is a Florida corporation operating in the City of Tampa; that by ordinance certain privileges and franchises in the use of the streets &c., are granted the telephone company by the City of Tampa, in consideration of which the telephone company among other things agreed to "furnish to the City of Tampa such telephones as it requires for public use in its several departments not to exceed twenty (20) telephones free of charge, and all such additional telephones as the city may desire for the transaction of its public business, at a similar rate and charge as for residence telephones." The maximum rates fixed in the city ordinance for "residence telephones" is $2.50 per month and for "business telephones" is $4.50 per month.

The statute in section 8 forbids a reduction in rates or other advantage "to any person or corporation" "not regularly and uniformly extended to all persons and corporations under like circumstances for like or substantially similar service." A somewhat similar provision is contained in section 9. Section 10 forbids "any undue unreasonable preference or advantage to any person, corporation or locality."

A city or county being a governmental as well as a corporate entity, is in its governmental capacity, not a "person or corporation" within the meaning and intent of the above provisions of the statute.

Section 8 as above quoted contains the following: "No telephone * company subject to the provisions of this Act shall, directly or indirectly, give any free or reduced service or any free pass or frank for the transmission of messages by * telephones * between points within this State," with a proviso. The bill alleges that the defendant gives "free or reduced service for the transmission of

messages by telephone" to stated "parties" who are presumably officials or employees of the City of Tampa; and it is further alleged that "none of said parties come within the proviso of said section 8 so as to render the service given them free or at reduced rate legal."

While the city ordinance set out in the bill of complaint fixes a maximum rate of $2.50 per month for "residence telephones" and a maximum rate of $4.50 per month for "business telephones" there is no allegation as to what rates are actually charged or as to whether in fact the rates actually charged are not within the $2.50 per month maximum and the same for both residence and business phones.

The bill of complaint proceeds upon the theory that the franchise rights for which the free and reduced rate phones are furnished to the city are of no value or else that nothing but cash payments can be received for telephone service. There is nothing in the statute to warrant either assumption. If the franchises granted to the company are not valuable the agreement to furnish free or reduced rate phones in return for such franchises would not have been made. There is no allegation that such franchises are of no value. And as property rights may exist in the lawful use of franchises, there is at least no presumption that they are without monetary value.

The statute does not expressly or by fair implication require compensation for telephone service to be only in cash payments as the service is rendered.

"The charge" referred to in the first part of section 8 above quoted does not require that "compensation" shall be made by cash payments.

There is nothing in the bill of complaint to indicate that the franchises and privileges granted by the municipality to the defendant telephone company are not of a

value equal to the difference between the free and reduced rates allowed the city and the rates for similar service that are charged the public generally. The county and the "Woman's Club" are not made parties to this proceeding.
Affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and ELLIS, JJ., concur.