STATE OF NORTH CAROLINA, EX REL NORTH CAROLINA UTILITIES
COMMISSION v. CITY OF WILSON AND CITY OF ROCKY MOUNT.

(Filed 10 June, 1960.)

**1. Appeal and Error § 21—**

An exception to the judgment presents whether the facts found sup-
port the judgment and whether error of law appears on the face of the
record, but it does not challenge the sufficiency of the evidence to sup-
port the findings, and the findings of fact are thus binding on appeal.

**2. Telephone Companies § 1c: Utilities Commission § 3—**

The Utilities Commission properly requires that a public utility should
make no unreasonable discrimination in its rates or tariffs, but should
charge the same rates to all customers within a particular classification
who receive the same kind and degree of service. G.S. 62-68, G.S. 62-69,
G.S. 62-72.

**3. Same—**

The Utilities Commission properly proscribes a telephone company
from furnishing service to certain municipalities within its territory
free or at a reduced rate, and contractual agreements of a telephone
company to do so in consideration for franchise rights to use the streets,
alleys and roads in such municipalities for its pole lines and underground
conduits, are void, since such concessions constitute discrimination against
other customers similarly situated, G.S. 62-69, and, further, since such
concessions are not in accord with the rates and tariffs filed with the
Utilities Commission. G.S. 62-68.

**4. Same: Taxation § 14: Municipal Corporations § 18—**

The requirement by a municipality that a telephone company, in ex-
change for the privilege of using the municipal streets, alleys and roads
for its pole lines and underground conduits, should furnish the munic-
ipality telephone service free or at a reduced rate amounts to the levy
of a franchise or privilege tax on the business of the telephone com-
pany by the municipality in violation of G.S. 105-120(f).

**5. Telephone Companies § 1c: Utilities Commission § 3—**

Chap. 685, Session Laws of 1959, undertaking to authorize and vali-
date franchise agreements under which a telephone company furnishes
municipalities telephone service free or at reduced rates, *is held* uncon-
stitutional in that it violates the due process provisions of both the
State and Federal Constitutions, results in a discriminatory tax, inter-
feres with vested rights, and attempts to surrender the police power
of the State.

**6. Appeal and Error § 55—**

Where judgment is predicated upon a misapprehension of the pertinent
law, the cause must be remanded for appropriate proceedings.

APPEAL by plaintiff, North Carolina Utilities Commission, from

*Bone, J.,* in Nashville, N. C., September 19, 1959 (judgment signed October 9, 1959), of EDGECOMBE.

This proceeding originated before the North Carolina Utilities Commission upon application of the Carolina Telephone & Telegraph Company for a general increase in its local service telephone rates in North Carolina. On 4 September, 1958 the North Carolina Utilities Commission entered an order approving in part and denying in part the application for increases in telephone rates and by the same order prohibited the further practice of rendering telephone service to municipalities at other than tariff rates.

Thereafter the city of Wilson on 6 October 1958, filed a petition for rehearing of so much of the order of 4 September 1958 as affects franchise service and gave notice of appeal from said order insofar as it relates to franchise service. And on 15 October 1958 the Utilities Commission ordered the proceeding reopened only to the extent that franchise service in the way of free telephone service to the cities and towns is involved within the company's territory. The matter was heard before the Commission on 13 November 1958, at which time both the City of Wilson and the City of Rocky Mount were present and offered evidence.

On 13 January 1958, the Commission entered an order reaffirming its conclusion in respect to franchise telephone service as set forth in its original order of 4 September 1958. The Commission made *inter alia* the following findings of fact:

"1. Carolina Telephone & Telegraph Company * * * has granted concession telephone service, without charge, or at lower rates than the rates which it has on file with the North Carolina Utilities Commission for similar service, under similar conditions, to certain municipal corporations and other users of its service.

"2. The granting of concession telephone service, without charge, or at rates less than those on file with the North Carolina Utilities Commission for similar service, under similar conditions, creates an unreasonable preference or advantage to the receiver of such service under such circumstances and subjects other persons and corporations which received service at regular scheduled tariff rates to unreasonable prejudice or disadvantage and establishes an unreasonable difference as to rates between localities receiving the same class of service.

"3. Concession telephone service, without charge, or at rates lower than those which the utility has on file with the North Carolina Utilities Commission for similar service under similar conditions, has been granted by the utility company to the municipalities and required by the municipality of the utility company in consideration for fran-

chise rights to the utility to operate in the municipality and use the streets, alleys and roads for its pole lines and underground conduits."

Upon the foregoing findings of fact the Commission reached the following conclusions set out in pertinent part:

"We find three compelling reasons to support our original order denying the company the right to continue furnishing concession telephone service to the municipalities.

"In the first place, every public utility shall file with the Commission, within such time and in such form as the Commission may designate, schedules showing all rates established by it and collected or enforced, or to be collected or enforced within the jurisdiction of the Commission. This is a provision of G.S. 62-68."

"The Carolina Telephone & Telegraph Company has on file with the North Carolina Utilities Commission schedules of rates and charges for all of its service. These rates and charges were established and fixed by the Commission in its order of 4 September 1958, the very case in which this controversy arose. Those schedules of rates and charges did not provide for a concession service, either without charge or at lower rates than the specified rate. Thus, the granting of a concession rate, without charge, or at a rate lower than the regular scheduled rates for similar service under similar conditions, is in direct contravention of G.S. 62-69 and is not permissible."

"In the second place, G. S. 62-70 provides that: 'No public utility shall, as to rates or services, make or grant any unreasonable preference or advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates or services either as between localities or as between classes of service. The Commission may determine any questions of fact arising under this section.' "

"All the testimony offered at the hearing is to the effect that telephone service is rendered to some municipalities, without charge, or at lower rates than that particular service is rendered under similar conditions to other like municipalities and that some municipalities using the same phone service and under the same operating conditions receive service, without charge, while other municipalities so situate are paying for this service * * * At the same time no effort has been made to arrive at any standard by which the concession service is allowed * * * In other words, the public utility company with rates on file with the North Carolina Utilities Commission has engaged in bargaining away part of its available revenues for service with some municipalities, driving the best bargain it could, while other munici-

palities receiving similar phone service under similar conditions have not received any concession service."

"In the third place, it is quite clear from the testimony that the municipalities have required a certain amount of concession service for the franchise right of the utility to carry on its business in the municipality * * * The general law is embodied in G.S. 105-120 * * * Counties, cities and towns shall not levy any franchise, license, or privilege tax on the business taxed under this section."

"While it is contended by the municipalities that they are not levying a franchise or privilege tax upon the telephone company but are in effect receiving certain telephone service, without charge, in payment of actual services rendered by the municipality to the company for which it is entitled to be paid, it is well to note the written language used in the franchise ordinance or agreement: 'In consideration of the rights and franchises herein granted, the said company shall furnish to the said city, free of cost, space for its fire alarm and police telegraph wires, upon all poles and in all underground conduits, erected, constructed and maintained by the said company under this ordinance; the said company shall further and also furnish to the said city— telephone stations, free of cost.' "

"We conclude that our order of 4 September, 1958, with respect to charity discounts and franchise services should be sustained and adhered to."

In apt time the City of Wilson and the City of Rocky Mount gave notice of appeal to the Superior Court. The cause was heard before Judge Bone on 19 September 1959, out of term.

Thereafter on 5 October 1959 judgment was entered reversing the order of the Utilities Commission, Judge Bone finding the following:

"After hearing argument of counsel for each of the parties hereto and after consideration of the record before the Utilities Commission, the court is of the opinion that Chapter 685 of the 1959 Session Laws is not unconstitutional;

"And the court is of the further opinion that in reviewing the order of the Utilities Commission it must consider the law in effect at the time of the review rather than the law that was in effect at the time of the Commission's decision;

"And, in that light, the court is of the opinion that each and every exception of the City of Wilson and the City of Rocky Mount should be sustained and that the order of the North Carolina Utilities Commission of January 13, 1959, should be reversed.

"It is, therefore, considered, ordered and adjudged that the exceptions of the City of Wilson and the City of Rocky Mount to the order

of the North Carolina Utilities Commission, dated January 13, 1959, in this cause, be and the same are hereby sustained, and that the order of the Commission be reversed, and the cause remanded to said Commission for further proceedings not inconsistent with this judgment."

To the foregoing judgment the North Carolina Utilities Commission excepts and appeals to the Supreme Court, and assigns error.

*Attorney General Seawell, Assistant Attorney General F. Kent Burns for North Carolina Utilities Commission.*
*Lucas, Rand & Rose for City of Wilson.*
*Thorp, Spruill, Thorp & Trotter for City of Rocky Mount.*

WINBORNE, C. J.   Decision on this appeal turns upon the answer to this question: Did the Judge of Superior Court err as matters of law in holding that Chapter 685 of the 1959 Session Laws is constitutional and of retroactive effect.

This act is captioned "An Act to validate certain agreements between telephone companies and municipalities and to make provision for future agreements." Sec. 1 of the act provides that "any franchise agreement or other arrangement heretofore made between any telephone company and any municipality in which the telephone company has agreed to furnish certain telephone service or facilities to the municipality is hereby in all respect validated during the life or term of such agreement or arrangement." And the General Assembly declared in Sec. 2 that "All laws and clauses of laws in conflict with this Act are hereby repealed, but nothing herein shall be construed as repealing, modifying, altering, or amending subsection (b) of G.S. 105-120"; and in Sec. 3 that "This Act shall become effective upon its ratification" * * * the 2nd day of June, 1959.

The above question arises upon exceptions 15, 16 and 17 to matters of law on which assignments of error are predicated. See *Lowie v. Atkins*, 245 N.C. 98, 95 S.E. 2d 271; *S. v. Dew*, 240 N.C. 595, 83 S.E. 2d 462; *Hunt v. Davis*, 248 N.C. 69, 102 S.E. 2d 405, as to sufficiency of the grouping of exceptions and assignments of error to comply with Rule 21 of the Rules of Practice in the Supreme Court. 221 N.C. 544, at page 558.

In respect to the above question the facts found on which the judgment from which appeal is taken is based are binding on this appeal,—the exception to the judgment raising only the questions as to whether the facts found support the judgment, and whether error in law appears upon the face of the record.

It is therefore appropriate to review the record in the light of pertinent principles of law.

Appellant at the outset contends that the Utilities Commission properly concluded that the Carolina Telephone & Telegraph Company was rendering service free or at reduced rates to some municipalities in violation of G.S. 62-69, which provides: "No public utility shall directly or indirectly, by any device whatsoever or in any wise charge, demand, collect or receive from any person a greater or less compensation for any service, rendered or to be rendered by such public utility than that prescribed in the schedules of such public utility applicable thereto then filed in the manner provided in this article, nor shall any person receive or accept any service from a public utility for a compensation greater or less than that prescribed in such schedules."

And G.S. 62-68 requires all public utilities to keep on file with the Commission schedules which show "all rates established by it and collected or enforced within the jurisdiction of the Commission."

In this connection, there is evidence in this record which discloses that concession telephone service (i.e., service for which no charge is made or for which the charge is less than the tariff or schedule charge) is extended to various municipalities served by the Carolina Telephone & Telegraph Company. There is no tariff on file with the Commission, providing for such service, nor is such tariff on file which permits it. To the extent of granting this service either free or at a reduced rate without a schedule of rates permitting such service the Commission held that the company was in violation of G.S. 62-68 and 62-69.

However, it is the contention of the municipalities that their franchise agreements with the company do not fall within the purview of the Commission's jurisdiction. They contend that the franchise agreements are in reality "private" contracts, and by the terms thereunder the cities grant the company the privilege, during the life of the franchise, of the use of the streets for erection of company poles and transmission lines, etc., in exchange for a designated number of telephones without cost or at a reduced rate.

The municipalities cite *Paper Co. v. Sanitary Dist.*, 232 N.C. 421, 61 S.E. 2d 378 (1950) for the proposition that the type of "private" contract at hand has been held to be outside of the jurisdiction of the Commission. However it should be noted that the contract in the *Sanitary District* case was between a private corporation and a quasi-municipal corporation, which by provision of G.S. 130-39 is not under the jurisdiction, control or supervision of the North Carolina

Utilities Commission as to service or rates. G.S. 62-30 (3). In the factual situation at hand, the Carolina Telephone & Telegraph Company is clearly under the supervision of the Commission by terms of G.S. 62-30 (2). Thus the *Sanitary District* case is clearly distinguishable factually from the instant case.

Indeed the Utilities Commission contends and properly concludes that the practice of rendering service to the municipalities either free or at a reduced rate is discriminatory.

A fundamental basis for the regulation of public utilities is to assure that once monopoly powers have been granted, the utility will provide all of its customers similarly situated with service on a reasonably equal basis. Prior to the Public Utilities Act of 1933 discrimination by a public utility was unlawful. *R. R. Discrimination* Case, 136 N.C. 479; *Lumber Co. v. R. R.*, 141 N.C. 171; *Garrison v. R. R.*, 150 N.C. 575, 64 S.E. 578.

G.S. 62-70 provides: "No public utility shall, as to rates or service, make or grant any unreasonable preference or advantage to any corporation or person or subject any corporation or person to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to rates or services either as between localities or as between classes of service. The Commission may determine any questions of fact arising under this Section."

In *Utilities Com. v. Mead Corp.*, 238 N.C. 451, 78 S.E. 2d 290, opinion by *Devin, C. J.*, the Court said: "The obligation of a public service corporation to serve impartially and without unjust discrimination is fundamental * * * (citing cases) * * * It is not essential that consumers who are charged different rates for service should be competitors in order to invoke this principle * * * (citing cases) There must be substantial differences in service or conditions to justify difference in rates. There must be no unreasonable discrimination between those receiving the same kind and degree of service. *Horner v. Elec. Co.*, 153 N.C. 535, 69 S.E. 607; *Postal Tel. Cable Co. v. Associated Press*, 228 N.Y. 370." This statement was quoted with approval in *Utilities Comm. v. Municipal Corporations*, 243 N.C. 193, 90 S.E. 2d 519.

Appellant cites 43 Am. Jur., Public Utilities and Services, Sec. 175, p. 687, for the majority rule that: "The majority of the cases take the view that the furnishing of free service for municipal purposes in compliance with franchise provisions constitutes an unjust and illegal discrimination."

Having made the determination that discrimination existed the Commission was bound by the terms of G.S. 62-72 which in pertinent

part provide: "Whenever the Commission, after a hearing * * * finds that the existing rates in effect * * * are unjust, unreasonable, insufficient or discriminatory * * * the Commission shall determine the just, reasonable and sufficient rates to be thereafter observed and in force, and, shall, fix the same by order as hereinafter provided. (1933, C. 307, S. 8)"

In *Corporation Comm. v. Water Co.,* 190 N.C. 70, 128 S.E. 465, the City of Henderson, North Carolina, brought suit against the Corporation Commission (now the Utilities Commission) and moved to enjoin the Commission from fixing rates for water supplied the City of Henderson by the Henderson Water Company, different from those rates stipulated in a prior existing franchise granted to the company by the city. The city's motion rested on the ground that the city's contract rights were being violated, and that neither the commission nor the court had the power or authority to change the rates during the life of the contract. The motion was denied and sustained on appeal, the Court holding: "The power conferred by its charter upon the City of Henderson to provide water and lights and to contract for same * * * is subject to the police power of the State, with respect to rates to be charged under such contracts as the city may make under its charter by a public service corporation. Constitution of N. C. Article VII, Sec. 12, Sec. 14; Art. VIII, Sec. 1."

In an earlier decision *In re Utilities Co.,* 179 N.C. 151, 101 S.E. 619 (upon which the court in the *Corporation Comm. v. Water Co., supra,* relied), the Court was presented with a petition for an increase in street car fares to a level exceeding that fixed by a franchise agreement between the City of Charlotte and the street car company. Our Court held that the public interest as set forth in the Commission's order is paramount over any contract the city may have for a lower rate. *Hoke, J.,* speaking for the Court, observed: "Not only is the judgment of his Honor sustained by the principle more directly involved, but any other ruling in its practical application would likely and almost necessarily offend against the principle which forbids discrimination on the part of these companies towards patrons in like condition and circumstance. If a quasi-public company of this kind could evade or escape regulation establishing fixed rates that are found to be reasonable and just by making long-time contracts or other, this regulation might be made to operate in furtherance of the very evil it is in part designed to prevent."

Indeed the Commission properly concluded that the requirement of free or reduced rate service by the municipalities as a condition precedent to the granting of franchises amounted to a tax in violation of

G.S. 105-120 (f), which provides: "Counties, cities and towns shall not levy any franchise, license, or privilege tax on the business taxed under this section." This provision has been in effect in one form or another since 1899 (Public Laws of 1899, C. 11, Sec. 60), and was made a part of the permanent Revenue Act when it was adopted in 1939 (Public Laws of 1939, C. 158).

The Commission held that in effect the means employed by the cities in granting franchise agreements constituted a levy of a tax. The Commission went on to find, however, that if it should be later determined that the concession service does not constitute the levy of a tax, but rather is a service for which the municipality is entitled to be paid, "it is in the public interest that each municipality bill the utility company for the service it renders and the utility company furnish telephone service to the municipality at the regular and applicable rates for the service rendered."

The Commission's findings are further substantiated by the franchise ordinance of the City of Rocky Mount where it sought to waive its presumed right to levy a privilege tax for occupancy of the streets and alleys of Rocky Mount in consideration of the company "furnishing to the town * * * the above free telephones."

The municipalities argue that the tax imposed by G.S. 105-120 (a) —(d) is a franchise or privilege tax to engage in business, and not a tax for the use of the streets and therefore the prohibition contained in G.S. 105-120 (f) does not apply. Our Court in opinion by Barnhill, J., later C. J., in Britt v. Wilmington, 236 N.C. 446, 73 S.E. 2d 289, held that a nickel exacted by a municipality from drivers for parking meters is only a consideration for use of the streets for a limited time: "The revenue derived from the on-street parking facilities is exacted in the performance of a governmental function. It must be set apart and used for a specific purpose. By whatever name called it is in the nature of a tax."

Adopting the view of either the municipalities or the Commission it becomes manifest that this is a franchise or privilege tax. Construing G.S. 160-2 (6) which authorizes municipalities to grant franchises upon reasonable terms, in pari materia with G.S. 105-120 (f) it becomes clear that no authorization of additional tax was intended.

Now coming to ruling of the Superior Court that Chap. 685 of the 1959 Session Laws is not unconstitutional and is effective retroactively, the Commission urges that the court erred since free or reduced telephone service to municipalities is a tax prohibited by law, and is discriminatory both as between towns which are similarly situated and as between those towns and individual rate payers living in towns

or in the country. Hence the Commission stressfully contends that the act is unconstitutional (1) because it offends the due process provisions of both State and Federal Constitutions, (2) because it is not a uniform tax, (3) because it interferes with vested rights, and (4) because it is an attempt to surrender the police power of the State.

In the light of these principles the Court holds that the 1959 act above referred to is unconstitutional. Moreover, since the effective date is fixed at June 2, 1959, its effect is prospective only.

Thus it is patent that the judge of the Superior Court in reaching the conclusion on which judgment below is predicated acted under a misapprehension of the law. Therefore the judgment will be and is hereby set aside and vacated, and the cause remanded for appropriate proceedings. See *McGill v. Lumberton*, 215 N.C. 752, 3 S.E. 2d 324, and cases cited. See also Strong's N. C. Index, Vol. 1, p. 140, Appeal and Error, Sec. 49.

Reversed and remanded.