(No. 43813.—

CITIZENS UTILITIES COMPANY OF ILLINOIS *et al.,* Appellants, v. ILLINOIS COMMERCE COMMISSION *et al.,* Appellees.

*Opinion filed November 30, 1971.*

CHAPMAN and CUTLER, of Chicago, (JOHN N. VANDER VRIES and DANIEL J. KUCERA, of counsel,) for appellants.

WILLIAM J. SCOTT, Attorney General, PETER A. FASSEAS, Special Assistant Attorney General, and JAMES R. SULLIVAN, Assistant Attorney General, all of Chicago, for appellee Illinois Commerce Commission.

ISHAM, LINCOLN & BEALE, of Chicago, (RICHARD G. FERGUSON, MICHAEL L. MILLER and GENE L. ARMSTRONG, of counsel,) for appellee Commonwealth Edison Company.

MR. JUSTICE WARD delivered the opinion of the court:

Eleven private utility companies have appealed from a judgment of the circuit court of Cook County which affirmed an order of the Illinois Commerce Commission denying their petition for relief from allegedly illegal rates for electricity supplied by the Commonwealth Edison Company. The companies are: Citizens Utilities Company of Illinois, Arbury Utilities Co., Inc., Illinois Municipal Water Company, Preston Utilities Corporation, Warrenville Water Company, Country Club Hills Utilities Company, Woodridge Sewer and Water Co., Buffalo Utility Company, Du Page Utility Company, Ferndale Heights Utilities Co. and Grandwood Park Utility Corp.

The appellants, which we will call "the Companies," purchase electricity from the Commonwealth Edison Company, an appellee and, hereafter, "Edison," for use in operating water supply and sewage pumping plants. Various municipalities in the same service area as the Companies also purchase electricity from Edison to operate municipal water supply and sewage pumping plants and

to operate street lighting systems. The charges for electricity furnished the municipalities are determined under Edison's Rate 24, a rate available only to municipalities which have granted franchises to Edison. The Companies are charged for electricity provided under Edison's Rate 6, which is a higher rate than Rate 24. The record shows that electric utilities in Illinois other than Edison have made similar municipal service classifications.

Claiming a right to purchase electricity under the more favorable terms of Rate 24, the Companies petitioned the Illinois Commerce Commission, the other appellee, to direct Edison to provide them electricity under that rate, rather than under Rate 6. They petitioned, too, for damages from Edison under section 72 of the Public Utilities Act (Ill.Rev.Stat. 1969 Ch. 111-2/3, par. 76) calculated on the difference between the amounts they paid Edison under Rate 6 and the lesser amount they would have paid under Rate 24 for the year prior to the filing of the complaint. This amount was alleged to be approximately $77,000, based on an average charge per kilowatt hour of 2.13 cents paid under Rate 6 and a charge of 1.27 cents which would have been available under Rate 24.

After hearings, the Commission on March 11, 1970, denied the petition and later denied the Companies' petition for rehearing. On August 31, 1970, the circuit court of Cook County affirmed the order of the Commission.

The Companies contended that the sales to them under Rate 6 violated sections 38 and 32 of the Public Utilities Act. (Ill.Rev.Stat. 1969 ch. 111-2/3, pars. 32, 38.) Section 38 prohibits a public utility from establishing or maintaining "any unreasonable difference as to rates or other charges *** either as between localities or as between classes of service." Section 32 of the act permits "[a]ny public utility *** as a basis for the determination of the charges made by it [to] classify its service according to

the amount used, the time when used, the purpose for which used, and other relevant factors."

It was stipulated before the Commission that under section 32 there was no significant difference between the amount of electricity used by the Companies and the municipalities, the time when the electricity was used, the purpose for which it was used or the cost to Edison of providing the service. The Commission did find that there were "other relevant factors" within the meaning of section 32, which justified Edison in placing the service to municipalities in a separate classification and under Rate 24.

The Companies basically make three contentions on appeal. First, they contend that a public utility may not sell electricity to one class of customers on more favorable rate and payment terms than to a similarly situated class of customers on the basis of "other relevant factors" which bear no relation to the type of electric service provided. Second, even if a separate rate classification can be supported by factors unrelated to the type of service, the franchising power of municipalities over public utilities, the existence of competition for municipal business, or the status of municipalities as public bodies cannot be considered to be "relevant factors," as Edison contended. Third, the Companies argue that the findings of the Commission are against the manifest weight of the evidence. The Companies make no contention that Rate 24 is in itself an unreasonable classification, nor that the difference in charges between the two classes of service is unreasonable.

To rebut the charges of violations of section 32 and 38 and to defend its sales to the Companies under Rate 6, Edison contended before the Commission, as it does here, that the unique position occupied by municipalities in relation to public utilities justifies the lower rate afforded them. In support of this Edison points out that municipalities have the authority to grant franchises authorizing

the use of streets and other municipal property in the course of providing electrical service. These franchises are granted for limited periods, and must be periodically renegotiated. Since suitable franchise ordinances are essential to Edison's operations, the more favorable terms given municipalities are justifiable as proper inducements to grant franchises suitable to Edison.

Another argument, which in Edison's view entitles it to place municipalities in a more favorable rate classification, is the existence of competition for municipal business among suppliers of power. Edison contended, and the Commission found, that suppliers of other forms of power, *e.g.,* natural gas, actively seek to supply municipalities with the power necessary to operate water supply pumping plants and sewage pumping plants. The record shows that by contrast the competition among suppliers of power to meet the needs of the Companies is practically nonexistent. Edison argues, too, that municipalities have authority to operate their own power plants and the extension of favorable terms to them encourages their continued use of Edison's facilities.

The range of review of orders of the Commission by courts is a limited one. This restricted authority to review was described in *Produce Terminal Corp. v. Commerce Com., 414 Ill. 582, 589:* "In reviewing an order of the Commission, the courts are limited to a consideration of the questions of whether the Commission acted within the scope of its authority, whether it made [proper] findings *** and whether constitutional rights have been infringed by the decision."

Too, section 68 of the Public Utilities Act (Ill.Rev. Stat. 1969, ch. 111-2/3, par. 72) provides: "Rules, regulations, orders or decisions of the Commission shall be held to be prima facie reasonable, and the burden of proof upon all issues raised by the appeal shall be upon the person or corporation appealing from such rules, regulations, orders or decisions."

Against these standards for review, we will consider whether there was an unreasonable discrimination under section 38 when the two classes of customers using electricity without significant differences as to amount, time and purpose of use were charged different rates on the basis of "other relevant factors" unrelated to the type of service provided.

The Companies say that section 32 permits a utility to base a rate classification only upon the type of service furnished. This reading of the statute is required, it is said, by the rule of *ejusdem generis,* which would limit the application of general terms. The rule, an aid in the interpretation of statutes, is that " *** where general words follow brief particular and specific words in a statute the general words must be construed to include only things of the same kind as those indicated by the particular and specific words." *(City of Chicago v. Ross, 257 Ill. 76, 79.)* The Companies observe that in section 32 of the Public Utilities Act, the particular expressions, "time," "amount" and "purpose" of service, relate to the type of service provided. Edison has based its more favorable rate of classification for municipalities on "other relevant factors," that is, on the existence of competition for municipal business, on the status of municipalities as public bodies, and on the desirability of Edison's securing suitable franchises. These grounds do not relate to the type of service furnished, which the application of *ejusdem generis* would require, and, the argument is, they cannot be the basis of classification for municipalities.

We do not find the argument persuasive. *Ejusdem generis* is not a rule of mandatory application. "It is only a rule of construction to aid in ascertaining and giving effect to the legislative intent, and cannot be applied to defeat the evident purpose of the statute. It must yield when a contrary legislative intent is apparent." *People v. Suttles, 15 Ill.2d 521, 525;* see also, *Hagen v. City of Rock Island, 18 Ill.2d 174.*

Considering the nature and purpose of the Public Utilities Act, we do not consider that the legislature intended to limit the Commission's authority to approve only rate classifications based on factors relating solely to the type of service furnished by a utility. "The power to make rates, of necessity, requires the use of pragmatic adjustments which may be called for by the particular circumstances," *(Iowa-Illinois Gas and Electric Co. v. Commerce Com., 19 Ill.2d 436, 442)*, and we judge that the Public Utilities Act invests the Commission with sufficient discretion to make those "adjustments." In authorizing the Commission to consider "other relevant factors" as a basis for classification of service, the legislature recognized the complexity and difficulty, if not impossibility, of establishing explicit and exclusive grounds which would authorize a public utility to classify its service. We consider that "other relevant factors" in section 32 of the Act is to be read as authorizing the Commission to approve rate classifications grounded on considerations other than the type of service provided by the utility. The question remaining is whether the Commission could properly find that Edison's rate classification of municipalities was based on permitted "other relevant factors" within the intendment of section 32.

We have not found any Illinois decisions considering Edison's argument that the power of municipalities to grant or withhold a franchise from a utility constitutes a relevant factor for rate-making purposes. There have been holdings in other jurisdictions that the furnishing of service to a municipality free or at a reduced rate under a franchise is an illegal discrimination. *(Winfield v. Public Service Com., 187 Ind. 53, 118 N.E. 531, 535; State v. City of Wilson, 252 N.C. 640, 114 S.E.2d 786.)* Other decisions, however, have regarded such a provision as not being unreasonably discriminatory on the theory that the concession in rates represents part of the consideration for the franchise. *(Cf. State of Washington ex rel. City of*

*Seattle v. Seattle and Rainer R.R. Co., 113 Wash. 684, 194 Pac. 820; State of Florida v. Peninsular Telephone Co., 73 Fla. 913, 918, 75 So. 201, 203.)* No broad rule can be drawn from the decisions. Whether the preference to municipalities is to be viewed as illegal discrimination would appear to depend on the particular constitutional or statutory provisions examined and the decisions of the jurisdiction. *Cf. State of Washington ex rel. City of Seattle v. Seattle and Rainer R.R. Co., 113 Wash. 684, 687 - 690, 194 Pac. 820, 821-822.*

This court has recognized that a municipality which has elected to operate its own generating plant has the authority to exclude an electrical utility from operating in the community. *(City of Geneseo v. Illinois Northern Utilities Co., 378 Ill. 506.)* Too, a municipality has the authority to tax an electrical utility and, in addition, may seek compensation from the utility, which may be in the form of money or products or services, for the use of municipal property. "The Corporate authorities of any municipality may tax \*\*\* persons engaged in the business of distributing, supplying, furnishing or selling electricity for use or consumption within the corporate limits of the municipality, and not for resale, at a rate not to exceed 5% of the gross receipts therefrom." The statute goes on to declare: "Any of the taxes enumerated in this section may be in addition to the payment of money, or value of products or services furnished to the municipality by the taxpayer as compensation for the use of its streets, alleys, or other public places \*\*\*." Ill.Rev.Stat. 1969, ch. 24, par. 8—11—2. See also, *East St. Louis v. Union Electric Co., 37 Ill.2d 537.*

Thus, the municipalities had the authority to operate their own power facilities and to exclude Edison's operations. They had the right to compensation for the utility's use of municipal facilities in addition to the power to tax. Edison was given the right by statute to make rate classifications based on the service provided and other

relevant factors. It is not unreasonable to assume that municipalities denied or given a preferential rate would take this into account when negotiating franchises with Edison. We consider that the almost ruling position municipalities occupied in relation to Edison could reasonably be regarded as a "relevant factor," which would permit Edison to create a municipal classification.

The Commission's ruling was that "Edison's use of the availability of Rate 24 in negotiating for and as an inducement in securing franchise ordinances from municipalities is justification for the limited availability of Rate 24 and for the difference between Rate 6 and Rate 24." We cannot say the Commission erred in its decision that the municipal classification was proper and that the differential between Rates 6 and 24 was justified and, in effect, not unreasonable. "We have long held that the decision of the Commission is entitled to great weight as being the judgment of a tribunal appointed by law and informed by experience." *(Iowa-Illinois Gas and Electric Co. v. Commerce Com., 19 Ill.2d 428, 442.)* That the extension of Rate 24 to municipalities was not a formal part of already negotiated franchises is not, we judge, material.

It is not inappropriate to mention that the approval of the preference to municipalities was not without Commission precedent. There were at least three early instances in which a similar issue was faced. These did precede the enactment of section 32 of the statute, but section 38, which prohibits unreasonable rate discriminations, was then in effect. The Commission in In Re Application of Abingdon Home Telephone Company, Public Utility Reports, 1915A, 29 at 32, "ordered that the petitioner discontinue the furnishing of free telephones to the city of Abingdon, and that it shall thereafter charge said city the regular scheduled rate for the class of service furnished." The Commission gave no reason for its order. Shortly thereafter, however, it apparently reversed its decision, and

approved the same franchise agreement which obligated the telephone company to furnish free service to the city of Abingdon. (In Re Application of Abingdon Home Telephone Company, Public Utility Reports, 1915C, 345, 347.) Though the Commission gave no reason for its decision, a rationale similar to the one advanced here by Edison can be found in an order of the Commission entered three years later in In Re Carrier Mills Utilities, Public Utility Reports, 1918C, 133. There, while the Commission disapproved a practice of providing the village president and churches with free telephone service, it carefully reaffirmed its prior approval of the arrangement whereby the municipality itself was provided with free service. It was said in the order: "In other cases the Commission has held to the opinion that service furnished free of charge in accordance with the provisions of a franchise ordinance did not constitute discrimination insofar as the free service might be reasonable in amount and character, and insofar as it might be regarded as a consideration for the right to the use of streets and other public property by the utility. The Commission sees no reason to depart from this position in this case ***."

In challenging the Commission's approval here, the Companies have relied importantly on *State v. City of Wilson, 252 N.C. 640, 114 S.E.2d 786.* The question there, however, was quite different from the one we consider here. In *City of Wilson,* the Carolina Telephone and Telegraph Company had applied to the North Carolina Utilities Commission for a general increase in its telephone rates. In its order partially approving the company's requested rate increase, the Commission directed the company to cease rendering service to municipalities at other than the general tariff rates which had been filed with the Commission.

The Commission made three findings, which were approved by the North Carolina Supreme Court. First, it

found that the free and discounted rates by the utility were not a part of Carolina Bell's general rate schedule on file with the North Carolina Utilities Commission, and that deviations from Commission approved rate schedules were prohibited by the North Carolina statute. Here, Edison's Rate 24 was on file with the Commission, and apparently unlike Carolina Bell, Edison made no effort to circumvent the Commission's rate-making authority. Second, the Commission observed that "[a]ll the testimony offered at the hearing is to the effect that telephone service is rendered to some municipalities, without charge, or at lower rates than that particular service is rendered under similar conditions to other like municipalities and that some municipalities using the phone service and under the same operating conditions receive service, without charge, while other municipalities so situated are paying for this service.*** At the same time no effort has been made to arrive at any standard by which the concession service is allowed ***." (State v. City of Wilson, 252 N.C. 640, 642, 114 S.E.2d 786, 788.) Here, all municipalities which granted Edison a franchise were furnished service under the more favorable terms of Rate 24. Third, the Commission found that the concession service conflicted with a North Carolina statute which prohibited counties, cities and towns from levying any franchise, license or privilege tax on business taxed by the State. The arrangement whereby the municipalities received free service was deemed by the Commission to be the equivalent of an indirect franchise tax. As we have previously indicated there is, of course, no such taxing prohibition in Illinois.

The Companies argue, too, that discrimination against members of the public served by them results from permitting municipalities to purchase electricity on more favorable terms. They introduced evidence that power costs are an operating expense which both the companies and the municipalities must pass on to their customers. It

therefore follows, the argument is, that their customers must pay more for service than similarly situated persons who are served by the municipalities.

The argument, however, is founded on the erroneous premise that there cannot legally be rate differences. Section 38 prohibits only unreasonable differences, not differences. (Ill.Rev.Stat. 1969, ch. 111-2/3, par. 38; *Illinois Central R.R. Co. v. Commerce Com., 359 Ill. 563, 568.*) And section 32 specifically authorizes a utility to make rate classifications.

We are not persuaded by the Companies' contention that the record does not support the findings of the Commission. Our decisions hold that the Commission's findings will not be disturbed on review unless they are clearly against the manifest weight of the evidence. *(United Cities Gas Co. v. Commerce Com., (1971) 48 Ill.2d 36; Galt v. Commerce Com., 28 Ill.2d 501.)* There was evidence upon which the Commission found that Edison's ability to provide its service within a municipality is dependent upon municipal permission in the form of a suitable franchise ordinance. There was testimony and documentary evidence that Edison's Rate 24 is offered to municipalities as an inducement to enact suitable franchise ordinances. The findings of the Commission were not against the manifest weight of the evidence.

*Judgment affirmed.*