WESTERN ILLINOIS ELECTRICAL COOP., Plaintiff-Appellee, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.—(UNION ELECTRIC COMPANY, Defendant-Appellant.)

Fourth District   No. 14809

Opinion filed January 9, 1979.—Rehearing denied February 8, 1979.

GREEN, J., specially concurring.
TRAPP, J., dissenting.

William E. Jaudes, of Union Electric Company, of St. Louis, Missouri, and Robert Broderick, of Pope & Driemeyer, of Belleville, for appellant.

Capps, Cosgrove & Ancelet, of Carthage, and John W. DeMoss, of Springfield, for appellee Western Illinois Electrical Coop.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos and James E. Weging, Assistant Attorneys General, of counsel), for appellee Illinois Commerce Commission.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This case is a contest between two utilities—Western Illinois Electrical Cooperative (Western) and Union Electric Company (Union)—to determine which of the two will furnish service to an area of some 66 acres known as Dirado Lanes, a proposed subdivision now annexed to the city of Hamilton. The contest, played on the Illinois Commerce Commission (Commission) turf, is essentially academic, rather than economic, for we are advised there has been no sale of lots in the proposed subdivision, or at least the number of lots sold has been small. The facts are not in dispute, but everything else is.

In 1944, Western extended a powerline from its then territory to a farm to serve a farm customer—Mr. Richard C. Humphry. On April 1, 1946, Mr. and Mrs. Richard Humphry executed an application for membership in Western and that application was accepted by Western. The application recited that the applicants would "* * * purchase from the Cooperative all electric energy used on the premises described below * * *." The description was that of a certain 120-acre tract which includes that which is now known as Dirado Lanes.

On July 2, 1965, the effective date of the Electric Supplier Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 401 et seq.), Western was serving the Humphrys. In 1971, Mr. and Mrs. Humphry constructed a new residence and Western extended service to that residence. In 1960, Union, which had a franchise from the city of Hamilton to supply electric service, extended a line to some property just north of the Richard Humphry farm. Also, in 1971, Mr. and Mrs. Humphry conveyed a small tract of their farm to Walter Bain, and Union extended service to that tract without objection from Western. On May 15, 1972, a portion of the Humphry farm was annexed to the city of Hamilton, and, although the annexed area was referred to as Dirado Lanes, the description was a metes and bounds description and the annexed area included the Bain tract. On that date,

therefore, Union was providing service to Bain and Western was providing service to Richard C. Humphry. In 1972, the Commission authorized Western to extend temporary service to a new residence being constructed by Richard Humphry's son, Wallace.

This contest between the two utilities as to which would supply service to the proposed subdivision was thereafter commenced and pursued through the Commerce Commission. The Commission ultimately entered its order, the substantive effect of which was to allow Western to continue serving the Humphrys with electrical services for farming purposes, but providing it could not extend its lines into such area for any other purpose without authorization from the municipality to which the territory had become annexed. Upon appeal, the circuit court reversed the Commission and remanded for further consideration. Upon this appeal from that order we affirm.

■■ The Electric Supplier Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 401 *et seq.*) was adopted in 1965, and it clearly appears that one of the purposes was to put to rest the contest between competing utilities as to which would supply what to whom and when. Section 5 of the Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 405) provides in pertinent part that each electric supplier is entitled to furnish service to customers at locations which it is serving on the effective date of the Act, being July 2, 1965; and it further provides that one supplier cannot construct lines into an area then being served by another supplier except upon the written consent of such other supplier and subject to the approval of the Commission. Section 5 of the Act, so far as is applicable, reads:

> "Each electric supplier is entitled, except as otherwise provided in this Act or (in the case of public utilities) the Public Utilities Act, to (a) furnish service to customers at locations which it is serving on the effective date of this Act, (b) furnish service to customers or premises which it is not now serving but which it had agreed to serve under contracts in existence on the effective date of this Act, * * *." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 405.

Section 14 of the Act makes some specific provisions relating to a utility that is serving an area which later becomes annexed to or otherwise located within an incorporated municipality. That section, so far as here applicable, reads as follows:

> "Except as otherwise provided in this Section, Sections 5 (other than the first paragraph thereof), 7 and 8 of this Act do not apply to any area which is located within an incorporated municipality on the effective date of this Act and shall cease to apply to any area after it is annexed to or otherwise becomes located within an incorporated municipality. An electric supplier which is serving in an area which has been or hereafter becomes annexed to or

otherwise located within an incorporated municipality may continue to furnish service within such annexed or otherwise incorporated area to the premises which it is serving at the time of such annexation or incorporation provided that: (i) no such supplier may extend its lines into any area previously or subsequently annexed or otherwise located within the incorporated municipality in which another electric supplier is authorized to maintain and extend its lines unless in any such case the electric supplier is or shall become authorized to do so by the incorporated municipality and the Commission; (ii) no such supplier serving in an area which has been previously annexed to or otherwise located in an incorporated municipality prior to the effective date of this Act may extend its lines within such annexed or otherwise incorporated area unless in any such case the electric supplier is or shall become authorized to do so by the incorporated municipality and the Commission; and (iii) no such electric supplier which is serving in an area which becomes so annexed to or otherwise located within an incorporated municipality after the effective date of this Act may furnish service to any additional premises or extend its lines into or within such area unless such supplier is or shall become authorized so to do by the incorporated municipality." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 414.

■■ The circuit court held that the Commission was in error in construing the Act to require approval by the city of Hamilton as a condition precedent for Western to supply power to the premises. The Commission, by its order, reasoned that Western was limited and must supply power only for the same or a more limited purpose than that which it was doing on July 2, 1965. That narrow construction of section 5 would defeat the obvious legislative purpose and would, or could, result in duplication of electrical service in the territory contrary to the clear intention of the Electric Supplier Act. Furthermore, the peace treaty aspect of the Electric Supplier Act would be breached by such construction. Where, as here, the facts are not in dispute and the issue is one of law, neither this court nor the circuit court is bound by the determinations of the Commerce Commission, nor is that determination entitled to a presumption of prima facie correctness. *Kensington Steel Corp. v. Industrial Com.* (1944), 385 Ill. 504, 53 N.E.2d 395.

■■ Clearly section 5 authorizes a utility that is serving premises to continue serving such premises, and section 5 does not purport to impose a limitation on future service that the utilities supplied be for the same purpose. We hold that under section 5 of the Electric Supplier Act any utility that is serving an area may continue to serve the area and is not limited to rendering service for such purposes as service was being

rendered on the effective date of the Act. The order of the circuit court of Sangamon County was correct and that order should be affirmed.

■■ The appellee has made a motion to dismiss the appeal on the grounds of mootness. We took that motion with the case. It also appears from this record now that, subsequent to the order entered by the circuit court, the Commission, in accordance with that order, proceeded to enter an order, the substantive effect of which was the same as this order, except that its observations to the limited purpose of service was deleted. Inasmuch as this is clearly a recurring issue, we deem it outside the usual run of cases relating to mootness. The motion to dismiss is denied.

Judgment affirmed.

Mr. JUSTICE GREEN, specially concurring:

I concur.

Sections 5 and 14 of the Act have a confusing relationship which I deem to require comment.

As has been stated, section 14 provides in part:

"(iii) [N]o such electric supplier which is serving in an area which becomes so annexed to or otherwise located within an incorporated municipality after the effective date of this Act may furnish service to any additional premises or extend its lines into or within such area unless such supplier is or shall become authorized so to do by the incorporated municipality."

Taken without reference to the first paragraph of section 5, the foregoing would prohibit Western from making any extension of lines to service Dirado Lanes without first obtaining permission from the municipality and the Commission. However, section 14 begins by stating "Except as otherwise provided in this Section, Sections 5 (other than the first paragraph thereof), 7 and 8 of this Act * * * shall cease to apply to any area after it is annexed to * * * an incorporated municipality." The clear implication is thus given that the first paragraph of section 5 *is* applicable to an area although it becomes annexed.

The first paragraph of section 5 is the quoted provision which entitles a supplier to furnish service to customers at locations it was serving on the effective date of the Act or under contract to do so. Although the first paragraph of section 5 is, itself, limited by the clause "except as otherwise provided in this Act * * *" no useful purpose would have been served by excepting that paragraph from the provisions made not applicable to annexed areas if the provisions for annexed areas was intended to be an exception to that paragraph. I conclude that the first paragraph of section 5 and the quoted provision of section 14 were intended to be considered together.

In order to give the two provisions a meaning consistent with each other, I interpret the word "area" used in section 14 to be more encompassing than the word "location" in section 5. Because section 14 is subject to the first paragraph of section 5, Western is entitled to serve the Richard Humphry farm and Dirado Lanes under the provisions of section 5 without obtaining municipal approval even though it has been annexed.

Although Western maintains section 14 to be invalid we need not consider that assertion because we do not consider the section to be determinative.

Mr. JUSTICE TRAPP, dissenting:

To state the issue in its full context, Western seeks the right to serve future purchasers of parcels of land who may become its customers within the annexed area. The proceedings were initiated before the Commission when Western served a notice of intent to extend its lines within the subdivision which incorporated a plat of 66 acres and 109 lots.

The Commission found that Western contends that by reason of the 1946 contract with Richard Humphry it is entitled to extend its lines and furnish its electricity to "any future customers who may ultimately acquire a part of the original Humphry premises." The same contention is urged in Western's brief in this court.

The Commission found that section 5 of the Act preserves the right of Western to continue service to Richard Humphry "at such locations where service is located * * *."

The trial court found the effect of the Commission order to be that Western may serve Richard Humphry but required:

"* * * that Western obtain from the City of Hamilton, authority to extend its line into and within Dirado Lanes area for any additional premises within such area now in existence and [sic] may be created by virtue of approval of a platted subdivision prior to seeking authorization of the Commission; * * *."

The majority would direct the opposite result and permit Western to provide service to the future customers who purchase lots or parcels of land within the subdivision. That conclusion purports to be founded upon the construction of sections 5 and 14 of the Act.

The scope of the sections is to be measured in the terms of the several definitions contained in the Act. Without again quoting section 5, one finds that it preserves the right of a supplier who serves or had contracted to serve "customers at locations."

The Act defines customers in section 3.3:

" 'Customer' means any person receiving electricity for any purpose from an electric supplier."

Section 3.12 gives the definition:

" 'Premises' means a physical area (a) which, except for any intervening public or private rights of way or easements, constitutes a *single parcel or unit* and (b) which a *single customer* owns, uses or in which it has some other interest in connection with receiving service at one or more points of delivery." (Emphasis supplied.)

Section 5 refers to "customers at locations," but we do not find a definition of the word "location" in the Act. The Commission adopted the dictionary definition, "A position or site occupied or available for occupancy." It is reasonable to conclude that "location" as used in section 5 is synonymous with, or the equivalent of, the defined "premises." In the context of such terms and definitions, section 5 preserves the right of suppliers to serve existing individual customers who possess or use single units or parcels of land.

Until Richard Humphry sold parcels of land, he was a single customer owning and using a single unit of land. When he sold parcels to his son and to Bain, as to such parcels he ceased to be a single customer owning a single unit of land served by Western. Procuring annexation of a subdivision contemplates a number of different customers owning and using a number of separate units of land. Western argues that such is its expectation.

Absent the conclusion that the first paragraph of section 5 controls, it is clear that part (iii) of section 14 would require that the order of the Commission be affirmed. It provides:

"[N]o such electric supplier which is serving in an area which becomes so annexed to or otherwise located within an incorporated municipality after the effective date of this Act may furnish service to any *additional premises* or extend its lines into or within such area unless such supplier is or shall become authorized so to do by the incorporated municipality. * * *." (Emphasis supplied.)

Section 14 is consistent with section 5 in its provision that a supplier serving an area which becomes annexed to a municipality may continue to furnish service within the annexed area "to the *premises* which it is serving at the time of such annexation * * *." (Emphasis supplied.) The use of the word "premises" found in section 14 must be as such term is defined by statute, *i.e.*, single customer upon separate units of land.

It is the determination of the majority that section 5 controls the operation of section 14 by reason of the language of the latter section:

"Except as otherwise provided in this Section, Sections 5 (other than the first paragraph thereof), * * * do not apply to any area which is located within an incorporated municipality * * *."

From such language it is concluded that the first paragraph of section 5 makes the provisions of section 14 inoperative as to the annexed Richard Humphry subdivision.

In purporting to preserve the rights of a supplier, the first paragraph of section 5 relied upon by the majority is itself qualified by the language "except as otherwise provided in this Act * * *." Aside from provisions concerning taxes and contracts between electric suppliers, all sections of the Act which precede section 5, all sections which intervene between section 5 and 14, and all sections which follow section 14, pertain to or concern matters of procedure before the Commission or its powers of enforcement. The provisions of section 14 state the only matter to which the language of section 5 "except as otherwise provided in this Act" may be said to be legislatively directed. The majority would thus make that qualifying language of section 5 apply to nothing and in effect meaningless.

One may doubt that it is proper to conclude that the legislature intended that an electric supplier should ride into the town by virtue of having supplied a single farmstead for some years prior to the adoption of the Act in question.

The supreme court has determined that the right of a municipality to control its streets and public facilities gives it the right to permit or to refuse a utility such use by a license or franchise, although no standard was imposed by the legislature. *City of Geneseo v. Illinois Northern Utilities Co.* (1941), 378 Ill. 506, 39 N.E.2d 26.

In *Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 276 N.E.2d 330, Commonwealth Edison provided electricity to municipalities which had granted a franchise to Commonwealth at a scheduled rate but charged a higher rate to other utilities requiring electricity. It was contended that the order of the Commission created an improper rate discrimination. In affirming the rate order of the Commission, the court noted:

> "There was evidence upon which the Commission found that Edison's ability to provide its service within a municipality is dependent upon municipal permission in the form of a suitable franchise ordinance. There was testimony and documentary evidence that Edison's Rate 24 is offered to municipalities as an inducement to enact suitable franchise ordinances." (50 Ill. 2d 35, 46, 276 N.E.2d 330, 336.)

That opinion also noted that section 8—11—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1969, ch. 24, par. 8—11—2) authorized a municipality to tax the distributing and selling of electricity within the corporate limits of the municipality and that such taxes may be in addition to the payment of money or value of products or services furnished to the municipality

by the utility as compensation for the use of its streets, alleys, or other public places.

The rationale for the legislative scheme of section 14 seems clearly apparent in that annexation to a municipality contemplates the ultimate development of streets and public places which the municipality is clearly entitled to regulate by ordinance for public health, safety, and general welfare, and under its police power to control and regulate. Western's thesis would permit it to presently build without municipal authority and without regard for the city's plan or standards for the control of the facilities which the City of Hamilton is entitled to control through its zoning ordinances and the regulation of streets and public places. A transition from farming use to that of a developed subdivision made without municipal authority obviously would conflict with the effective use of the clear rights of the municipality. It appears proper for the legislature to contemplate such potential for conflict and require Western to procure authority to build in accordance with the standards which the city is entitled to enforce.

A careful examination of the statutory terms and scheme of the Act discloses that there is no conflict in fact between sections 5 and 14 and that it is unnecessary to determine that the language of one section must control the language of the other section.

I would affirm the order of the Commission.