COLES-MOULTRIE ELECTRIC COOPERATIVE, Plaintiff-Appellee, *v.*
ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants.

Fourth District   No. 15416

Opinion filed September 17, 1979.

Elmer Nafziger, of Nafziger & Otten, of Springfield, and William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and Thomas J. Russell, Assistant Attorney General, of counsel), for appellants.

Sims, Grabb & Bennett, of Mattoon, and Albert J. Cross and Jon W. DeMoss, both of Springfield, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

The issue here: What does the term *"locations"* mean as used in the Electric Suppliers Act?

The Illinois Commerce Commission and Central Illinois Public Service Company appeal a decision of the circuit court in administrative review. The central question is which of two electric suppliers—Coles-

Moultrie Electric Cooperative or CIPS—are entitled to render electrical services under the Electric Supplier Act (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 401-416) to 19 residences.

The Commission opted for CIPS.

The circuit court reversed.

The lower court was right.

We affirm.

The relevant facts are undisputed. Since December 10, 1955, Richard and Ruth Mae Coen have continuously owned a 70-acre tract in Cumberland County, adjoining Lake Mattoon. Coles-Moultrie has been providing electrical services to two Coen residences on the southern portion of the tract since 1947. On July 2, 1965 (the effective date under the Act), CIPS had one line transversing the northern portion of the property, but was not providing any services.

In June or July of 1971, CIPS extended its line to provide services to 19 residences on the property. Coles-Moultrie instituted proceedings with the Commission, claiming it had a right to serve the customers in question.

On October 16, 1974, the Commission entered its order finding that since April 15, 1972, CIPS had connected 19 trailers or seasonal structures on the property and that two distinct physical areas were involved, one contiguous to the line of CIPS and the other contiguous to the Coles-Moultrie line. It was also determined that section 5 of the Act was inapplicable and that CIPS had the right under section 8 to serve the customers.

Upon Coles-Moultrie's complaint in administrative review, the circuit court in an articulate, well-grounded memorandum opinion determined that the Commission's finding of two contiguous physical areas was against the manifest weight of the evidence. In so doing, the court noted that the evidence clearly illustrated that the entire area was owned by the Coens, had not been platted or subdivided, and was not physically divided by any public road or natural geographic feature.

Our reading of the Act reveals that one of its express purposes was to avoid duplication of facilities. In order to achieve this end, the Act contemplates a system whereby electric suppliers will enter into agreements to divide the service areas. In passing the Act, however, the legislature was careful to protect the rights of the suppliers as they existed on the effective date of the Act. Section 5 provides:

> "Each electric supplier is entitled, * * *, to (a) furnish service to customers at *locations* which it is serving on the effective date of this Act, * * *." (Emphasis ours.) Ill. Rev. Stat. 1977, ch. 111 2/3, par. 405.

The quintessence of the instant dispute is the meaning to be given to

the term "locations." The Commission urges a restrictive interpretation which would result in the two Coen residences constituting separate "locations" from the 19 seasonal structures. This limited reading would equate locations with "points of delivery," which is used elsewhere in section 3.12 of the Act.

■■ The evidence here clearly establishes that the Coen property constitutes a single location. While ownership of the property is not the conclusive determining factor, the fact that the entire tract is owned by the same individuals is highly persuasive. Additionally, as the circuit court noted, the land was not platted or subdivided nor was it divided by any public road or natural geographic feature.

■■ In order to constitute a separate location, there must be some feature of the area in question which would set it apart from the surrounding parcels. A public road, a body of water, or a legal division (such as platting or subdividing the land) all could serve to distinguish one location from the surrounding area. In this case there was none.

Recently, in *Western Illinois Electrical Coop. v. Illinois Commerce Com.* (1979), 67 Ill. App. 3d 603, 385 N.E.2d 149, we had an occasion to discuss the relationship between section 5 and section 14 of the Act. Our opinion there clearly indicates that section 5 of the Act is not to be read in a restrictive manner.

In an attempt to avoid the application of section 5 to this case, the Commission and CIPS further argue that whenever there is a dispute under the Act, section 8 governs. We cannot agree.

■■ While it is true that section 8 of the Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 408) sets forth criteria for the Commission to consider in resolving a dispute between suppliers over a service area, it cannot be read as dispositive of the right given under section 5 for a supplier to continue to serve locations it was servicing on the effective date of the Act. The Act mandates that the Commission make an initial determination under section 5. Only after it has been determined that neither supplier has a right under section 5 to provide services is the Commission free to consult section 8. It was not permitted to resort to section 8 in the case at bench.

The Commission was wrong, the circuit court was correct to reverse, and we affirm.

Affirmed.

REARDON, P. J., and CRAVEN, J., concur.