CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fourth District   No. 4—90—0855

Opinion filed September 30, 1991.

William S. Hanley and Liesl G. Smith, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Roland W. Burris, Attorney General, of Springfield (David L. Nixon, Special Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Claudon, Lloyd, Barnhart & Beal, Ltd., of Canton, and Grosboll, Becker, Tice, Alvarez & Smith, of Petersburg (Gary E. Barnhart and Jerry Tice, of counsel), for appellee Spoon River Electric Cooperative, Inc.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff in administrative review Central Illinois Public Service Company (CIPS) appeals a circuit court order which affirmed an order of the Illinois Commerce Commission (Commission). In its order, the Commission determined that CIPS is exclusively entitled to serve approximately 20 acres of the 100-acre site of a new State prison at Canton, and a competing electricity supplier, Spoon River Electric Cooperative (SREC), is exclusively entitled to serve the remaining 80 acres of the tract.

The prison tract was formerly a part of the 545-acre Gavenda farm. On the July 2, 1965, effective date of the Electric Supplier Act (ESA) (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 401 *et seq.*), CIPS provided service at one point on the farm, and SREC provided service at two points on the farm. Neither supplier at that time provided service on the portion of the farm which was to become the prison tract.

On June 19, 1968, the Commission approved a service-area agreement, entered into by CIPS and SREC, which provides in pertinent part:

> "WHEREAS, the parties hereto, in order to avoid duplication of facilities and to minimize disputes between themselves which may result in inconvenience and diminished efficiency to the public, and in the public interest desire so to contract.
> ***

1. The parties hereto covenant and agree that each shall continue to be entitled to (a) furnish service to customers at locations which each was serving on July 2, 1965, (b) furnish service to customers or premises which it had agreed to serve under contracts in existence on July 2, 1965, and (c) resume service to any premises to which it had discontinued service in the twelve months preceding July 2, 1965, and on which are still located the supplier's service facilities whether or not either such locations or premises are located within territory hereinafter delineated as its service area and each shall also continue to serve either such locations or premises as to which each has lawfully commenced service since July 2, 1965, and prior to the effective date of this agreement.

2. The parties hereto covenant and agree that [SREC] shall be entitled exclusively to serve all consumers with their electric service requirements in the area or areas designated as SREC on the maps hereto attached as Appendices 1 to 3, inclusive, and [CIPS] shall be entitled exclusively to serve all consumers with their service requirements in the area or areas designated as CIPS on said Appendices 1 to 3, inclusive, provided, however, that each party may continue to serve any locations or premises which it is entitled to serve under Paragraph 1 above even though such locations or premises be located in the areas designated on Appendices 1 to 3, inclusive, as the area of the other party ***."

The maps appended to the service-area agreement establish that the 80 westernmost acres of the prison tract are in SREC's designated service area, and the eastern 20 acres are in CIPS' designated service area.

After the State announced plans to construct a new prison at Canton, both CIPS and SREC made efforts to be designated as the exclusive electricity supplier for the prison. Eventually, the Department of Corrections (DOC) chose not to select an electricity supplier for the new prison. Rather, DOC instructed CIPS to obtain a Commission determination of whether it or SREC should serve the prison. Accordingly, CIPS, on October 27, 1987, filed with the Commission a petition requesting a finding that it has an exclusive right to serve the new prison at Canton, and SREC, on August 31, 1988, filed a counterpetition requesting a determination of its right to serve the new prison.

Evidence presented at the hearing on CIPS' petition and SREC's counterpetition established that 87.4% of the square footage of the

buildings at the Canton prison is within SREC's service area designated in the CIPS-SREC service-area agreement, and 12.6% of the square footage is in CIPS' service area. Furthermore, 92.9% of the prison's total electricity usage will occur in SREC's service area, while 7.1% of the prison's electricity consumption will take place in CIPS' service area. A map of the prison grounds reflects that the only structures entirely within CIPS' service area are a guard tower, a boiler building, and a pump station. Portions of two wings of each of three residence halls are also within CIPS' service area.

Before the prison was constructed, CIPS had three phase power lines paralleling the northern and western boundaries of the prison tract. Because of the existence of these lines, CIPS was capable of immediately providing service to the prison. SREC at that time had no similar facilities in proximity to the prison site, but it did have a single-phase power line running along the western boundary of the prison tract.

Before construction of the new prison began, DOC directed CIPS to provide temporary service to construction trailers on the site. Since then, CIPS has provided and continues to provide temporary electricity service to the prison tract.

In its order entered October 4, 1989, the Commission found that the CIPS-SREC service-area agreement controls resolution of the question of CIPS' and SREC's rights to serve the prison tract. The Commission further held that despite its preexisting service facilities on other portions of the Gavenda farm, CIPS has no grandfather rights to serve the prison tract which are superior to those of SREC. The Commission found that CIPS did not establish an exception under paragraph 2 of the service-area agreement which prevents Spoon River from serving the west 80 acres of the prison tract. The Commission further held that the City of Canton's issuance of franchises to CIPS and SREC did not alter its conclusion regarding the rights of these two electricity suppliers under their service-area agreement. The Commission concluded that SREC is entitled to serve the portion of the Canton prison located in its service area (approximately the west 80 acres of the prison tract), "including without limitation the residence buildings which are substantially in" SREC's service area, and CIPS is entitled to serve the remaining portion of the prison (approximately the east 20 acres of the prison tract). The Commission further ordered that neither supplier furnish electricity to DOC in the territory allocated to the other under the service-area agreement, except in the event of an outage of service provided by the other supplier.

Two members of the Commission filed a dissenting opinion. Among other things, they stated that the requirement in the Commission's order that each supplier stand ready to serve the entire prison in the event of an outage on the other's lines and the consequent necessity of each supplier installing transmission and distribution facilities capable of serving the entire prison violated the legislative intent expressed in section 2 of the ESA (Ill. Rev. Stat. 1989, ch. 111⅔, par. 402) of avoiding duplication of facilities of electricity suppliers.

■ Pertinent to the question of whether the Commission properly determined the rights of CIPS and SREC to serve the Canton prison are the following portions of the ESA:

"The General Assembly declares it to be in the public interest that, in order to avoid duplication of facilities and to minimize disputes between electric suppliers which may result in inconvenience and diminished efficiency in electric service to the public, any 2 or more electric suppliers may contract, subject to the approval of the Illinois Commerce Commission, as to the respective areas in which each supplier is to provide service." Ill. Rev. Stat. 1989, ch. 111⅔, par. 402.

"Each electric supplier is entitled, except as otherwise provided in this Act or (in the case of public utilities) the Public Utilities Act, to (a) furnish service to customers at locations which it is serving on the effective date of this Act, (b) furnish service to customers or premises which it is not now serving but which it had agreed to serve under contracts in existence on the effective date of this Act, and (c) resume service to any premises to which it has discontinued service in the preceding 12 months and on which are still located the supplier's service facilities." Ill. Rev. Stat. 1989, ch. 111⅔, par. 405.

"Any 2 or more electric suppliers may contract together defining and delineating, as between themselves, one or more service areas in which each such contracting supplier shall be entitled to furnish service. Such contracts are subject to the approval of the Commission." Ill. Rev. Stat. 1989, ch. 111⅔, par. 406.

A service-area agreement between electricity suppliers which the Commission has properly approved "control[s] the rights of the parties to the agreement, to the exclusion of the [ESA], except insofar as the agreement incorporates the [ESA]." (*Rural Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n* (1979), 75 Ill. 2d 142, 146, 387 N.E.2d 670, 672.) Clearly, the rights of CIPS and SREC to

serve the Canton prison are controlled by the service-area agreement into which they entered.

CIPS asserts that the Commission erred in holding that it is precluded from serving the west 80 acres of the prison tract. CIPS contends that contrary to the Commission's holding, it and SREC have an equal right to serve the entire tract. In other words, CIPS argues that DOC is entitled to select either it or SREC as the exclusive electricity supplier for the entire prison tract. CIPS' basis for this argument is that the prison tract was formerly part of the Gavenda farm, on which it was providing service as of July 2, 1965. CIPS maintains that the entire farm—including the prison tract—is a "location" which it is entitled to continue serving under paragraph 1 of the service-area agreement.

The language of the service-area agreement here at issue, conferring "grandfather rights" to provide electricity to "locations" served as of the agreement's effective date, is virtually identical to that contained in section 5 of the ESA (Ill. Rev. Stat. 1989, ch. 111⅔, par. 405) concerning "grandfather" service rights. Thus, it could be assumed that the parties to the service-area agreement intended that "locations" have the same meaning for purposes of the agreement as it does within the context of the ESA.

■ In *Coles-Moultrie Electric Cooperative v. Illinois Commerce Comm'n* (1979), 76 Ill. App. 3d 165, 167, 394 N.E.2d 1068, 1069, *appeal denied* (1980), 79 Ill. 2d 625, this court explained the meaning of "locations" for purposes of the ESA:

> "In order to constitute a separate location, there must be some feature of the area in question which would set it apart from the surrounding parcels. A public road, a body of water, or a legal division (such as platting or subdividing the land) all could serve to distinguish one location from the surrounding area."

The difficulty with defining "locations" in this same manner for purposes of the CIPS-SREC service-area agreement is that *Coles-Moultrie* was decided in 1979, more than 10 years after CIPS and SREC entered into their agreement. For this reason, we cannot say with certainty that the parties to the CIPS-SREC service-area agreement intended the word "locations," as used in the agreement, to have the same meaning as this court attributed to it in interpreting the ESA in 1979.

■ Because it is possible to attribute various meanings to the word "locations" as used in the service-area agreement at issue in this case, that term of the agreement is ambiguous. (*Village of*

*Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031, 1034.) Parol evidence may be considered in interpreting ambiguous contractual terms. (*Lewis v. Board of Education of North Clay Community Unit School District No. 25* (1989), 181 Ill. App. 3d 689, 701, 537 N.E.2d 435, 443.) The only parol evidence presented to the Commission regarding the meaning of the term "locations" as used in the CIPS-SREC service-area agreement is the prepared testimony (tendered by SREC) of Thomas H. Moore, executive vice-president and general manager of the Association of Illinois Electric Cooperatives (AIEC). Moore testified that the service-area agreement here at issue is identical to a model service-area agreement which the AIEC negotiated with CIPS on behalf of its member cooperatives. Moore stated that the committee which negotiated this agreement reported to him in his capacity of general manager and that he coordinated the committee's activities. Moore testified as follows concerning his understanding of the meaning of the term "locations" as used in the model service-area agreement:

"QUESTION: As the General Manager of the AIEC[,] to whom [the] Power Supply Committee reported, what was your understanding of the use of the word 'location' in the Service Area Agreement in general and in Par. 1 in particular?

ANSWER: I believe that the parties intended the word 'location' to mean exactly what that word means to a common ordinary person who is able to speak and understand the English language.

QUESTION: Could you please explain that further for the Commission?

ANSWER: It was my understanding that the AIEC and CIPS intended in negotiating the Service Area Agreement that a 'location' under this agreement would mean that particular location that was being served on July 2, 1965 as is provided for in Par. 1. By that, I mean to say that, for example, if a farmer owned a quarter section, consisting of 160 acres, and if he had a house located on the East 80 acres of that 160 acre tract and if the co-op. was providing electrical service to that house and had the East 80 acres of the 160 under the Service Area Agreement and CIPS had the West 80 acres of the 160 under the Service Area Agreement, then if new service were established in the West 80 acres, CIPS would get that load. Each of the co-ops., with the help of the AIEC, spent a great amount of time, as did CIPS, filing maps with the Commission showing the 'locations' that they were serving on July 2, 1965

in order that the boundaries could be accurately drawn so that, as new service developed in the future, there would be little doubt as to who was entitled to serve."

■ CIPS argues that Moore's testimony cannot be considered by this court because the Commission totally ignored it and made no reviewable findings of fact on the basis of it. However, the Commission is not required to make particular findings as to each evidentiary fact or claim. (*United Cities Gas Co. v. Illinois Commerce Comm'n* (1970), 47 Ill. 2d 498, 501, 265 N.E.2d 608, 610; *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n* (1988), 174 Ill. App. 3d 1049, 1055, 529 N.E.2d 610, 614.) Furthermore, the Commission stated in its order in this case that it considered all of the evidence presented. For these reasons, we may rely upon Moore's testimony in determining the meaning of the term "locations."

■ The testimony of Thomas Moore, which is the only evidence relevant to the meaning of the term "locations" as used in the CIPS-SREC service-area agreement, establishes that the parties to the agreement intended this term to have its commonly accepted meaning—a particular point at which electricity is being supplied, rather than an entire farm or tract of land on which there is at least one service point. Thus, under the terms of the service-area agreement, CIPS and SREC providing service to particular points on the Gavenda farm did not confer upon them "grandfather" rights to serve the entire farm. Rather, the right to serve points on the farm other than those actually being served on July 2, 1965—including the prison tract—is controlled by the provisions of the service-area agreement which allocate exclusive service areas. The Commission therefore did not err in concluding that CIPS and SREC are entitled to provide permanent service only to those parts of the prison tract which are within their service areas as defined in the service-area agreement.

Our holding is not contrary to the decision in *Coles-Moultrie Electric Cooperative v. Illinois Commerce Comm'n* (1985), 131 Ill. App. 3d 946, 476 N.E.2d 1303, in which this court held that two electricity suppliers have equal rights to serve a particular tract of land located in the City of Arcola. There was no service-area agreement which affected the rights of the two suppliers to serve that tract. In the present case, by contrast, the question of which supplier is entitled to serve the prison tract is governed by a service-area agreement.

■ CIPS contends that the Commission's order will result in an impermissible duplication of electricity distribution facilities because SREC will have to construct new lines and facilities to serve the Can-

ton prison, while CIPS already has adequate facilities in the area. SREC asserts that CIPS waived this argument by failing to present it to the circuit court. Contrary to SREC's contentions, CIPS did properly preserve this point for review by including it in its complaint for administrative review. CIPS' duplication of facilities argument is, however, without merit.

Both section 2 of the ESA (Ill. Rev. Stat. 1989, ch. 111$^{2}$/$_{3}$, par. 402) and the CIPS-SREC service-area agreement contain precatory language expressing a preference for avoiding duplication of electricity distribution facilities. There is, though, nothing in the service-area agreement which explicitly precludes a duplication of facilities. It must be assumed that when a service-area agreement is executed, the parties have a full understanding of what present and contemplated service facilities they have in and near the areas allocated to them, and that they intend to abide by the terms of the agreement, despite the presence of facilities in or near an area allocated to the other supplier. Thus, the fact that CIPS has facilities capable of immediately serving the entire needs of the Canton prison in close proximity to the prison tract, but SREC may have to construct some new facilities in order to serve the tract, is of no consequence in determining the service rights of SREC and CIPS under their agreement.

■ In its briefs and at oral argument, CIPS suggested that the Commission erred in ordering it to construct and maintain facilities adequate to provide power to the 80 acres of the prison tract to be served by SREC in the event of an outage in SREC's service. CIPS contends that this requirement likewise will result in an impermissible duplication of electricity distribution facilities. CIPS refers to no evidence which establishes exactly what additional equipment or facilities it must install in order to provide backup service to the portion of the prison tract to be served by SREC. At oral argument, SREC suggested that CIPS will have to make no additional investment in order to be able to provide this service.

The appellant has the burden of providing citations to the record which support its position. Where there are no references to portions of the record which support an argument for reversal, the reviewing court need not consider that argument. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 802, 405 N.E.2d 1051, 1060.) Because CIPS provided no citations to portions of the record establishing the additional equipment or facilities, if any, which it will need to install as a result of the portion of the Commission's order requiring it to provide backup service in the event of an emergency, we need

not consider CIPS' contention that this portion of the order will result in an improper duplication of electricity distribution facilities.

We affirm the circuit court order which affirmed the order of the Illinois Commerce Commission.

Affirmed.

GREEN and STEIGMANN, JJ., concur.