CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, d/b/a AmerenCIPS, Plaintiff-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellees.

Fourth District    No. 4—02—0443

Argued March 19, 2003.—Opinion filed July 30, 2003.—Rehearing denied September 16, 2003.

Scott C. Helmholz (argued), of Brown, Hay & Stephens, of Springfield, for appellant.

Jerry Tice (argued), of Grosboll, Becker, Tice & Reif, of Petersburg, and Robert V. Bonjean, Jr., of Bonjean Law Office, of Jacksonville, for appellee Illinois Rural Electric Company.

James E. Weging (argued), Special Assistant Attorney General, of Chicago, for appellee Illinois Commerce Commission.

JUSTICE COOK delivered the opinion of the court:

Plaintiff, Central Illinois Public Service Company, d/b/a Ameren-CIPS (CIPS), is an Illinois public utility. Defendant, Illinois Rural Electric Company (IREC), is an Illinois not-for-profit corporation organized on a cooperative basis for the purpose of furnishing and distributing electrical energy. Both are electric suppliers within the meaning of the Electric Supplier Act (Act) (220 ILCS 30/1 through 16 (West 2000)).

Since November 12, 1957, IREC has provided electrical service to the Schimmel farm in Pike County. On June 26, 1969, IREC and CIPS entered into a service-area agreement (agreement) delineating the

service areas in which each was entitled to provide electric service to customers. The boundary line established by the agreement ran through the Schimmel farm.

A portion of the Schimmel premises was eventually transferred to the Akers in 1988 and is currently owned by them in the form of the Oakbrook Subdivision. Another portion was eventually transferred to the Longs in 1995, and a third portion was eventually transferred to Paxton in 1997. The Long premises are divided approximately in half by the boundary line established by the agreement. The Paxton premises and the Oakbrook Subdivision are located wholly on the IREC side of the boundary line.

The three tracts were annexed to the City of Pittsfield in 1995. Although they were not on the CIPS side of the boundary line, and CIPS had not previously furnished service to them or to the Schimmel premises, CIPS connected electric service to the Paxton premises and several lots in the Oakbrook Subdivision in 1997. CIPS connected electrical service to the Long premises in 1996, but none of that service is supplied or used on IREC's side of the boundary line. In 1997, IREC filed a complaint with the Illinois Commerce Commission (Commission) regarding service to the Long premises. In 1998, IREC filed an amended complaint regarding service to the Paxton premises and Oakbrook Subdivision. The Commission ruled in favor of CIPS as to the Long premises and in favor of IREC as to the Paxton premises and Oakbrook Subdivision (ICC No. 97—0287).

The Commission referred to the following provisions of the agreement between CIPS and IREC as relevant to the instant dispute.

Paragraph one provides that "[t]he parties hereto covenant and agree that each shall continue to be entitled *to (a) furnish service to customers at locations which* each was serving on July 2, 1965." (Emphasis added.)

Paragraph two provides:

"[T]he parties hereby covenant and agree that [IREC] shall be entitled exclusively to serve all consumers with their electric service requirements in the area or areas designated as IREC on the maps hereto attached as Appendices 1 to 8, inclusive, and [CIPS] shall be entitled exclusively to serve all consumers with their electric service requirements in the areas designated as CIPS on said Appendices 1 to 8, inclusive, provided, however, that each party may continue to serve any location or premises which it is entitled to serve under paragraph 1 above even though such locations or premises be located in the areas designated on Appendices 1 to 8, inclusive, as the area of the other party ***."

Paragraph six provides:

"The future annexation into a municipality of any part or all of the service areas of one or both the parties hereto shall not affect this [a]greement provided that such party whose service area or areas, or a part thereof, is, or are, annexed in whole or in part, can or does qualify to serve in such municipal area under the provisions of [s]ection 14 of the Electric Supplier Act, as approved July 2, 1965. If such party does not or cannot so qualify then the right to serve in such area shall be determined under the Electric Supplier Act as approved July 2, 1965."

Service-area agreements control the rights of the parties to such agreements, to the exclusion of the Act, except insofar as the agreement incorporates the Act. *Rural Electric Convenience Cooperative Co. v. Illinois Commerce Comm'n*, 75 Ill. 2d 142, 146, 387 N.E.2d 670, 672 (1979). The Commission concluded that neither CIPS nor IREC had any rights to continue to furnish service under paragraph one of the agreement, the "grandfather" clause, because none of these three tracts were a "location" served by IREC or CIPS on July 2, 1965. The Commission held that a "location" in the context of paragraph one means "a particular point at which electricity is being supplied, rather than an entire farm or tract of land on which there is at least one service point." *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 219 Ill. App. 3d 291, 299, 579 N.E.2d 1200, 1205 (1991) (hereinafter *Canton Prison*). IREC was providing electrical service to the Schimmel premises on July 2, 1965, but the point at which electricity was supplied by IREC was not on the three tracts in dispute.

The Commission concluded that CIPS had the exclusive right to provide service to the Long premises. The Long premises were on CIPS's side of the boundary line. Although the Long premises had been annexed to the City of Pittsfield, CIPS "can or does qualify to serve in such municipal area" as required by paragraph six of the agreement.

Although the Paxton premises and Oakbrook Subdivision were on IREC's side of the boundary line, the Commission, referring to paragraph six of the agreement, held that IREC "does not qualify to serve in such municipal area under section 14 of the Act due to its lack of a franchise with the City of Pittsfield." Because the issue accordingly was not controlled by the agreement, the Commission looked to section 5, the grandfather clause of the Act:

"Each electric supplier is entitled, except as otherwise provided in this Act or (in the case of public utilities) the Public Utilities Act, *to (a) furnish service to customers at locations which* it is serving on the effective date of this Act ***." (Emphasis added.) 220 ILCS 30/5 (West 2000).

In applying the Act, the Commission used a different definition of "location" than it did with the grandfather clause in the agreement, despite their identical language:

> "In order to constitute a separate location [under section 5], there must be some feature of the area in question which would set it apart from the surrounding parcels. A public road, a body of water, or a legal division (such as platting or subdividing the land) all could serve to distinguish one location from the surrounding area." *Coles-Moultrie Electric Cooperative v. Illinois Commerce Comm'n*, 76 Ill. App. 3d 165, 167, 394 N.E.2d 1068, 1069 (1979).

The Commission concluded that the entire Schimmel premises was a "location" for purposes of section 5 of the Act, and there were no separating features that would break it into separate locations. Therefore, since the Paxton premises and Oakbrook Subdivision were located within the geographical boundaries of the Schimmel premises as of July 2, 1965, IREC, which at that time supplied electrical service to the Schimmel farm, had the exclusive right to serve the Paxton premises and Oakbrook Subdivision.

On May 7, 2002, the circuit court affirmed the decision of the Commission in Sangamon County case No. 99—MR—0333. CIPS appeals, arguing the Commission should have applied the *Canton Prison* "particular point at which electricity is being supplied" definition of "location" to section 5, rather than the broad *Coles-Moultrie* "feature which would set it apart" definition. It is not clear how that would help CIPS. Even if IREC's rights under section 5 were limited to the Schimmel point of supply, CIPS did not furnish service to the three tracts on the effective date of the Act. Since neither IREC nor CIPS served any particular point in the three tracts, the outcome would depend on where the boundary line was drawn in the agreement. CIPS also argues that the use of a broad definition in the section 5 grandfather clause interferes with the rights of municipalities to grant franchises.

On May 28, 2002, the City of Pittsfield granted IREC a franchise that apparently includes the Paxton premises and Oakbrook Subdivision. IREC has moved to dismiss CIPS's appeal on that basis. CIPS, however, argues that, at the time it began to furnish service to the Paxton premises and Oakbrook Subdivision, it had municipal franchise authority to serve those customers and IREC did not. CIPS argues that IREC's after-acquired municipal franchise authority should not be dispositive of this case. CIPS also questions whether the Pittsfield ordinance in fact covers the Paxton premises and the Oakbrook Subdivision and suggests that IREC should not be allowed to supplement the record with matters that were not considered by the Commission.

*Canton Prison* involved the 545-acre Gavenda farm, which was serviced at one point by CIPS and at two points by Spoon River Electric Cooperative (SREC). The State decided to build a prison on 100 acres of the farm, with 92.9% of the electric usage in SREC's area, as set out in the service-area agreement, and 7.1% of the usage in CIPS's area. CIPS argued that because it furnished service to the location (the farm but not the 100 acres) on the effective date of the Electric Supplier Act, as did SREC, both had an equal right to serve the entire tract and the Department of Corrections could select either to supply the entire prison tract. The court rejected that argument, concluding that the parties, in their agreement, intended the word "locations" to mean the particular point at which electricity is supplied, rather than an entire farm or tract. *Canton Prison*, 219 Ill. App. 3d at 299, 579 N.E.2d at 1205.

The court's holding in *Canton Prison* was that the service-area agreement executed by the parties should control. "It must be assumed that when a service-area agreement is executed, the parties have a full understanding of what present and contemplated service facilities they have in and near the areas allocated to them, and that they intend to abide by the terms of the agreement, despite the presence of facilities in or near an area allocated to the other supplier." *Canton Prison*, 219 Ill. App. 3d at 300, 579 N.E.2d at 1205-06. The parties had drawn their boundaries, and the court was unwilling to read the grandfather clause to render the drawn boundaries meaningless for an entire 545-acre tract.

The Commission gave the same effect to the service-area agreement boundary line in this case. CIPS was allowed to provide service to the Long premises, which were on its side of the boundary line, even though IREC had elsewhere provided service to the Schimmel farm. IREC was allowed to provide service to the Paxton premises and Oakbrook Subdivision, which were on its side of the boundary line. We disagree with the Commission's conclusion that this case must be decided under the Act and not under the agreement since "IREC does not qualify to serve in such municipal area under [s]ection 14 of the [Act] due to its lack of a franchise with the City of Pittsfield." The agreement refers back to the Act only if "such party does not or cannot so qualify." The fact that IREC had not obtained a franchise did not mean that it could not do so. The Commission should have decided this case under the agreement's grandfather clause, in the light of the boundary line drawn by the parties, and not under the Act's grandfather clause. We reaffirm our holding in *Canton Prison*, that in interpreting a service-area agreement's grandfather clause, the word "locations" should be interpreted narrowly to mean the particular

point at which electricity is being supplied. Exceptions to the boundary line drawn by the parties should be narrowly construed.

We also agree with *Coles-Moultrie*, that when there is no service-area agreement, and no agreed-upon boundary line, and perhaps the only basis for the resolution of the dispute is the determination who previously furnished electrical service, a broad definition of "location" should be employed. The entire premises should be considered a location unless there is some feature, such as a public road, a body of water, or a legal division, which would set it apart from the surrounding parcels. *Coles-Moultrie*, 76 Ill. App. 3d at 167, 394 N.E.2d at 1069.

Finally, we reject CIPS's argument that the use of a broad definition in the Act's grandfather clause somehow interferes with the rights of municipalities to grant franchises. "Nothing in this Act shall be construed to impair, abridge, or diminish in any way the powers, rights[,] and privileges of incorporated municipalities." 220 ILCS 30/14 (West 2000). We are confident that the City of Pittsfield has the ability to protect itself against any interference with its rights.

A second decision of the Commission (ICC No. 99—0646) was consolidated in the administrative review proceedings in the circuit court and is a part of this appeal. That case, Sangamon County case No. 01—MR—0071, involved the same service-area agreement between IREC and CIPS. IREC provided service to the Bybee farm north of the Village of Pleasant Hill (Village), and the entire farm is on the IREC side of the boundary line. A portion of the Bybee farm was platted as the Capps Subdivision and annexed by the Village in 1998. CIPS possessed a franchise from the Village, and IREC did not. CIPS connected service to two houses in the subdivision in 1998 and 1999. IREC filed a complaint with the Commission in 1999. On November 21, 2000, the Commission ruled in favor of IREC, employing an analysis similar to that set out above. On August 22, 2002, the Village granted IREC a franchise, which apparently includes the Capps Subdivision.

For the foregoing reasons, we affirm the decision of the circuit court, affirming the decisions of the Commission in these two consolidated cases.

Affirmed.

TURNER and APPLETON, JJ., concur.